LUKE ALLEN *against* SOLOMON GLEASON AND OTHERS.

Non-residents of a school district having ratable estate within it, are liable to pay taxes on such estate, in common with the inhabitants of the district, for all the purposes for which school districts are empowered to lay taxes.
Where an execution debtor refuses to turn out property, when demanded, declaring at the same time that the proceedings are illegal, the officer is excusable if he levies on the body, though the debtor may have abundant personal property.

MOTION for a new trial.

This was an action of trespass and false imprisonment.

It appeared on trial to the jury, that the plaintiff was, and always had been, an inhabitant of *East Windsor*; that he owned land in the town of *Enfield*, but never resided there; that he had for many years given in a list of his land in *Enfield* to the proper authority; that at a legal meeting of the inhabitants of the school district in which said land was situated, it was voted to build a school-house, to effect which a tax of eight cents on the dollar was laid, and a rate-bill made out in which the name of the plaintiff was inserted. *Gleason*, having a legal warrant for the collection of said tax, gave notice, by setting up a written notification at a public inn. The plaintiff's tax not being paid, *Gleason* arrested him, and confined him in the common gaol. The court charged the jury, that said land was by law taxable for the purpose above mentioned, and that the notice was sufficient. The plaintiff also offered to prove, that he had abundant personal property within the knowledge of the defendant *Gleason*, liable by law to be levied upon; but the plaintiff refused to turn out any property, alleging that the tax was illegal. The defendants objected to the admission of this testimony, and it was rejected by the court.

The jury found a verdict for the defendants. The plaintiff moved for a new trial, on the ground that the court erred in charging the jury as above; and also in rejecting the testimony offered by the plaintiff.

*Bradley*, in support of the motion, contended,

1. That no corporation had power by common law to bind any person who was not a member of their body. *Com. Dig. By-Law*, C. 2. The power of taxing the plaintiff must, then, if possessed, be given by statute. The clause of the law immediately applicable to the present case, and on which the defendants rely, authorizes the inhabitants of any school district to tax *themselves* for the purpose of building a school-house.(a) The plaintiff has never been an inhabitant of the school district in which this tax was laid. We think, therefore, that by a forced construction only can the provisions of this law be extended to the plaintiff. It is true, that in certain cases towns and ecclesiastical societies are expressly authorized to tax non-residents. It is attempted to show that there is such an analogy between those cases and the present that the court may fairly infer that the legislature intended to grant the same powers in each. May it not as fairly be inferred that the legislature, by expressly granting the power of taxation in certain cases, recognised the principle, that the power was wanting where not expressly given; that these exceptions prove what is the general rule? But as the construction contended for takes away a common law right, the statute must be taken strictly, and the plaintiff cannot be brought within its purview by far-fetched analogies.

2. That, however the law with respect to non-residents may be, the court erred in rejecting the testimony. By the statute(b) the officer is explicitly directed to dis-

(a) *Stat. Conn.* tit. 141. c. 1. s. 12.    (b) Tit. 135. c. 1. s. 32.

June, 1810.

ALLEN
v.
GLEASON.

train goods or chattels, if they may be had.   Now, the testimony offered was direct, that personal property of the plaintiff was in the defendant's power.   The refusal of *Allen* to turn out property cannot help the defendant. The statute, indeed, directs the officer to take the body in case no goods or chattels can be found, *or* shall be tendered.   The object of the statute is clear.   So regardful is it of personal liberty, that though the officer may have made the most diligent search, without success, yet the body shall not be taken, if property be tendered on which the warrant may be levied.   It was preposterous in the officer to make a demand of property, which was before his eyes.   The plaintiff could only have said there is property; and that was known before.   The officer was not to take it by agreement with the plaintiff, but by process of law.

*H. Terry* and *Mitchell*, contra.

1. It has been the general opinion with which the practice has been coextensive, that our statutes, in general, authorize corporations to tax non-residents.   Taxes in counties, in towns, in ecclesiastical societies, &c. have invariably been assessed upon this principle.   In only one case is the power expressly given, and the expressions are different in different statutes; yet a comparison of the several laws upon that subject will show that the intention of the legislature, with respect to the persons liable to taxation, was the same in each.

2. The testimony rejected could have been of no avail, if received, coupled, as it was, with the circumstance that the plaintiff refused to turn out property.   The law was made to prevent the officer from unreasonably restraining the person of the debtor.   In *Hall* v. *Hall*, 1 *Root*, 124. the court said, before the levy on the body, the debtor is to have his election either to pay the money, tender estate sufficient, or deliver his person to the officer.   From the statement it appears that *Allen*

did elect not to pay the money; that he did elect not to tender estate; and as but one alternative remained, the officer very properly adopted it.

BALDWIN, J. This case presents two grounds to support the motion for a new trial:

1. That the charge was incorrect.

2. That the court rejected proper evidence.

The first point depends merely on the due construction of the several statutes relating to the subject.

The statute entitled " An act for the collection and payment of rates or taxes,"(a) in the first section, declares, " That every inhabitant in this state shall contribute to public charges, both civil and ecclesiastical, whereof he doth or may receive benefit, &c. to be levied and collected, as is, or shall be, by law provided." The second section enacts, " That all rates and taxes that shall be granted by the general court, and all other rates or taxes of counties, towns, societies, or any community, by law enabled to grant and levy taxes, shall be made by the same rule, that is to say, according and in proportion to the general list of polls and ratable estate, from time to time given and made, according to law, except where another rule of levying rates, taxes, or assessments, is by law provided, in any particular case or cases." By this latter section, the grand list is made the basis of general taxation. This is a given, known, and certain rule, embracing, as well the polls of residents, as all the ratable estate within the community, both of residents and non-residents.

The power given to the corporation in question to lay taxes, is by the twelfth section of the act entitled " An act for appointing, regulating and encouraging schools,"(b) which enacts, " That the inhabitants of any school district, qualified to vote in school society meet-

(a) Tit. 135. c. 1.          (b) Tit. 141. c. 1.

June, 1810.
ALLEN
v.
GLEASON.

ings, shall have power to tax *themselves*, for the purpose of building, or otherwise procuring, a school-house for such district," &c.  By this section, the defendant claims that the school districts have the general powers of taxation for the object specified.  The plaintiff contends that their powers are limited; for that by the expression *to tax themselves, ex vi termini*, non-residents are excluded; that they receive no benefit from the object of the tax; and are, in no instance, taxable by any community, except by power specially delegated.

It is conceded, that counties, towns, cities, and ecclesiastical societies, have all exercised the power of taxing the property of non-residents; and yet the authority by which they do so is expressed in very different terms.

The power to tax counties is given to assistants and justices in these words: " To tax the inhabitants."(a) The same power is given to the county court, &c. for other objects, in these words : " To grant and levy a tax, upon each town, according to the lists of estates."(b) That given to school societies is, " To grant rates."(c) Selectmen have power, in one instance, " to tax the inhabitants according to the list ;"(d) in another, " to levy a tax on the inhabitants."(e)  The power of towns is inferrible from their power to appoint a collector when they shall have " granted a tax to be levied and collected, of themselves."(f)

Thus, it appears, that the words used in granting to the several corporations the power of taxation, are not, in any two instances, the same.  Yet, I presume, it was never conceived that the legislature intended to introduce different rules, varying according to the strict letter of the expression, to wit, that a power " *to tax the inhabitants*," or " *to tax themselves*," was confined, strictly, to

(a) Tit. 81. c. 1. s. 3.        (b) Tit. 42. c. 1. s. 44.
(c) Tit. 141. c. 1. s. 1.        (d) Tit. 143. s. 1.
(e) Tit. 135. c. 1. s. 12.        (f) Tit. 135. c. 1. s. 25.

the polls, or that the power to tax according to the *lists*
*of estates, excluded* the polls. It is apparent that the
legislature, by these various expressions, intended the
same thing—the general power of taxation; and such,
in all the cases specified, has been the immemorial con-
struction.

It is also worthy of remark, that the power of school
societies to tax for building school-houses, is given in
these words: " To grant rates;" the most general and
comprehensive expression that could be used ; and there
can be no reason assigned, why school societies should
tax by a rule including non-residents, and that school
districts must tax for the same object, by a rule exclu-
ding them.

It is, however, contended, that the power given to
towns by a late statute " to tax themselves upon the lists
of their polls, and ratable estate," for repairing high-
ways, did not give the power to tax non-residents, because
by a subsequent statute that power is expressly given.
This additional statute does not, in my opinion, enlarge
the power of towns; by the general law, they were au-
thorized to do the same; yet, as taxation for repairs of
highways was permitted in lieu of personal services, to
which non-residents were not liable, to remove all doubt
this explanatory statute was made, not to extend, but to
confirm, their power.

From the analogy of our system, I have no doubt that
the general law would have enabled ecclesiastical so-
cieties, in all cases, to include the property of non-re-
sidents in their taxes, had not particular statutes, for
reasons therein expressed, regulated the appropriation
of those taxes arising on such property. This exception
tends to prove the general rule. It also shows that
such property is not exempt from taxation; and that
without such provision it must be taxed in the society
where it is situated.

It is evidently the policy of our law that all the au-

June, 1810.

ALLEN
v.
GLEASON.

thorized expenses of local communities, shall be borne by a uniform rule of taxation, on all the polls and ratable estate within them; on the fair principle, that such expenditures are generally beneficial to the property of non-residents as well as to the inhabitants. And I conceive, that the exception provided in the statute, of " another rule for particular cases," is answered by the special and peculiar powers given to commissioners of sewers, proprietors of common fields, &c.

I am therefore clearly of opinion, that the power given to school districts by the statute in question, is the general power to tax upon the " general list of polls and ratable estate," within the district including the ratable estate of non-residents.

2. The second point depends on the relevancy of the evidence offered.

It is not in this case pretended that property was offered, shown, or tendered to the collector, whereon he might levy to satisfy his warrant. On the contrary, it appears that the plaintiff objected to pay the tax, or to yield obedience to the warrant, on the ground that the tax was illegal, and that no levy could be legally made.

It is conceded, that collectors of taxes have the powers, and must proceed generally in the same manner to collect, as officers having executions. They are bound to take property in preference to the body, if tendered; they are bound to take property if tendered, even after a levy on the person.

The statute which regulates the levy of executions and warrants, was made in pursuance of a fundamental principle of our law, that personal liberty should not be unnecessarily restrained. But if the debtor, for whose benefit the rule exists, neglects to offer property, or refuses to turn it out when demanded, declaring, at the same time, that the proceedings are illegal, he waives the privilege the law has given him, and the officer is excusable if he levies on the body. In this view of the sub-

ject, the evidence offered was irrelevant, and, of course, ought to have been rejected.

I am of opinion that there is no cause for a new trial on either ground.

In this opinion the other judges severally concurred.

New trial not to be granted.

