*New-Haven,*
*July, 1836.*

Rowe
*v.*
Blakeslee.

---

## Rowe *against* Blakeslee:

### IN ERROR.

Where the school society of *E.*, upon the application of the inhabitants of a school district in *E*, living *North* of a certain highway in that district, the length, course and *termini* of which were given, passed a vote, in *April*, 1800, granting liberty to such inhabitants to join with, and make a part of an adjoining district in the school society of *N;* and, in *October*, 1800, the school society of *N.* concurred in such vote ; it was held, that the territory in the former district, *North* of the highway, was, by such votes, annexed to the latter district; and was not afterwards subject to taxation in the former district.

The lands of a non-resident proprietor are, since the revision of 1821, as well as before, subject to taxation, in the school district wherein they lie.

THIS was an action of trespass, brought by *Zerah Blakeslee* against *Hiram Rowe*, the object of which was, to recover of the defendant the sum of 75 cents, a tax paid by the plaintiff to the defendant, as the collector of taxes for the *North-West* school district in the town and society of *East-Haven*, by virtue of a warrant directed to the defendant, for the purpose of collecting such tax.

The cause was tried before the county court of *New-Haven* county, *November* term, 1835.

The plaintiff claimed, that the tax had been illegally assessed upon him, by said school district, which, previous to, and until the 7th of *April*, 1800, included all the territory bounded

*North* on *North-Haven* town line, *East* on *Foxen's* school district, and *West* on the *East* river. On that day, said school society passed the following vote : " Whereas *Stephen Heminway* and *Philemon Harrison*, and the rest of the inhabitants living *North* of the highway, leading from said *Harrison's* to the little bridge, so called, now make a part of the *West* school district in said *East-Haven ;* and said *Heminway* and *Harrison* pray this meeting to grant the before-mentioned persons liberty to be joined to the school district next adjoining to them, within the limits of *North-Haven :* Therefore, *voted*, that said *Heminway, Harrison*, and the rest of the inhabitants aforesaid, have liberty to join with, and make a part of, the district above-mentioned, within the limits of *North-Haven*, provided the school society in *North-Haven* approve of the same." On the 13th of *October*, 1800, the school society in *North-Haven* passed the following vote : " Upon the application of *Stephen Heminway* and *Philemon Harrison*, to the school society of *North-Haven*, to be set off to the *West* district in *North-Haven*, and showing a vote of the school society of *East-Haven* that they were willing that said *Stephen Heminway* and *Philemon Harrison*, and all the rest of the inhabitants living on the *North* side of the road, leading from said *Harrison's* to the little bridge, so called, might be set off to the *West* district in *North-Haven :* *Voted*, that *Stephen Heminway* and *Philemon Harrison*, and all the inhabitants living on the *North* side of the highway leading from said *Harrison's* to the little bridge, have liberty to join themselves to the *Muddy-river* district, so called, in *North-Haven.*" The highway mentioned in these votes was about half a mile in length, running *Easterly* and *Westerly*. From its *Westerly* termination to the *East* river, or *Western* bounds of the district, is about three fourths of a mile ; and from its *Eastern* termination to the *Easterly* bounds of the district, is about half a mile. At the times when the votes were passed, there were but four families living on the territory *North* of the highway, including the families of said *Heminway* and *Harrison*, all of whom lived adjoining the highway on the *North-East* side thereof. At the time of laying the tax, the plaintiff was, and ever since has been, the owner of certain lands lying *Northerly* of the highway, within the limits of the town of *East-Haven*, and within the local limits of said *North-West* school dis-

New-Haven,
July, 1836.

Rowe
*v.*
Blakeslee.

trict in *East-Haven* school society, unless by operation of the votes aforesaid, it was taken therefrom and transferred and annexed to the school district in *North-Haven.* The plaintiff was then, and always has been, an inhabitant of this state; but he was not then, and never has been, an inhabitant of, or resident in, said *North-West* school district, nor taxable therein, unless as such non-resident owner of the lands before-mentioned, in respect to which the tax in question was laid.

Upon these facts, the court decided, that the tax was illegally laid and assessed upon the plaintiff, as owner of such lands; and therefore, rendered judgment for the plaintiff to recover from the defendant the amount of the tax so paid. The defendant filed a bill of exceptions, and thereupon brought a writ of error in the superior court; which was reserved for the advice of this court.

*Kimberly,* for the plaintiff in error, contended, 1. That nonresident proprietors of real estate are taxable in the town, or local corporation, where the estate lies. In the first place, it is conceded, that the general law was so previous to the revision of the statutes in 1821. Secondly, the revision has not varied the general law in this respect. *Stat.* 560. *tit.* 135. *c.* 1. *s.* 1. 2. (ed. 1808.) *Stat.* 444. 449. 450. *tit.* 100. *c.* 1. *s.* 1. 7. 14. Thirdly, the spirit and object of the law is now, as it then was, to subject the property of all persons, whether residents of the corporation or not, to its proportion of those burthens, which are imposed for the common good; as highways, bridges, schoolhouses, &c. Fourthly, uniform practice confirms this construction; and convenience requires it. How otherwise is real estate to be assessed?

2. That school districts are not an exception to the general rule. In the first place, the same reasons require the application of the same rules to those corporations. Secondly, the law was so declared, in the case of *Allen* v. *Gleason,* 4 *Day* 376. Thirdly, the language of the revised statute respecting school districts, is more favourable to this construction, than the old law. Compare *Stat.* 586. (ed. 1808.) with *Stat.* 399. *s.* 7. Fourthly, school districts are now corporations of the same nature as before; and therefore, the case of *Allen* v. *Gleason* is still an authority. Fifthly, since the adoption of the constitution of this state, ecclesiastical societies have ceased to be lo-

cal corporations : hence it is provided, by the revised statute, that those corporations may tax the *members only.* Sixthly, the argument of inconvenience, in the case of land lying partly in two districts, applies equally to school societies, and perhaps other corporations, about which there is no doubt. It is enough that there is no objection of that kind existing in the present case. Seventhly, the act of 1836, on this subject, corroborates this construction, and provides against future difficulty in any case.

3. That the land on which this tax was assessed, is within the limits of the district which imposed the tax. In the first place, it is conceded, that it was so prior to the votes passed in 1800. Secondly, school districts were then, and still are, corporations with territorial limits. The term implies it. It is apparent also from the different sections of the act concerning schools. *Stat.* 396, 7, 8, 9. *tit.* 84. *c.* 1. *s.* 1. 3. 4. 5. 7. Thirdly, the votes of the school societies do not vary the local limits or geographical lines of the district, as it was in 1800; nor do they form a new district. They do not use apt language for that purpose. Nor did they intend to do so. And if they did, the act would be void, as the boundaries would be *uncertain.* They intended, by those votes, to confer upon those families, a mere *personal privilege. Withington* v. *Eveleth,* 7 *Pick.* 106. *Kingsbery* v. *Slack* & al. 8 *Mass. Rep.* 154.

*Ingersoll,* for the defendant in error, contended, 1. That by the votes of 1800, the territory described therein was taken from the district in *East-Haven,* and annexed to the adjoining district in *North-Haven.* In *May,* 1799, the legislature empowered adjoining school societies to form districts composed of parts of those societies. *Stat.* 582. *tit.* 141. *c.* 1. *s.* 2. (ed. 1808.) Soon after this, *viz.* in 1800, the societies of *North-Haven* and *East-Haven,* passed the votes annexing the *inhabitants* living *North* of the road from *Harrison's* to the little bridge in *East-Haven,* to the adjoining district in *North-Haven.* Those inhabitants could be annexed in no other way than *territorially.* The term *district* implies that. If, therefore, the inhabitants *North* of the line were annexed, the land *North* of the same line, would, of course, be annexed, though not mentioned in the votes. The acts incorporating boroughs speak merely of the *inhabitants* living within certain limits ;

nothing is said of the territory. *Stat.* 95. *tit.* 11. *c.* 1. The
same is true in the act incorporating cities. *Stat.* 108. *tit.* 15.
*c.* 1.

2. That if, however, these votes of the societies do not annex the territory, still the *East-Haven* district could not tax the land of *Blakeslee*, because he did not reside in the district, but was an inhabitant of *North-Haven.* Before the revision of 1821, our tax laws made a distinction between real estate and personal property, in reference to the place where it might be taxed. Personal property, wherever it might be, was taxed, by the town where the owner resided ; but real estate was taxed, by the town wherein it was situated. This was by statute regulations. *Stat.* 463. *tit.* 102. *c.* 1. *s.* 1. 570. 571. *tit.* 135. *c.* 1. *s.* 41. 42. (ed. 1808.)

3. That by the revision of 1821, this distinction between real and personal estate was abolished ; and the inhabitants of the different towns were required to furnish the assessors of their towns with lists of *all* their taxable property. *Stat.* 521, 2, 3. 526. *tit.* 105. *c.* 1. *s.* 1. 2. 6. (ed. 1835.)

BISSELL, J. Two questions have been raised and discussed upon this writ of error.

1. Are the lands, upon which the tax was laid, within the limits of the school district imposing the tax ? And if so,

2. Was the tax lawfully imposed, the plaintiff being an inhabitant of *North-Haven,* and never having resided within the district ?

1. Are the lands within the limits of the district ?

It is admitted, that they were so until the year 1800 ; and whether, during that year, they were annexed to the *Western* district in *North-Haven,* depends upon the effect which is to be given to certain votes, passed by the school societies of *North-Haven* and *East-Haven.*

By these votes, *Stephen Heminway, Philemon Harrison,* and the rest of the inhabitants, living *North* of the highway, leading from said *Harrison's* to the little bridge, so called, had liberty to join themselves to, and make a part of, the adjoining district in *North-Haven.* Do these votes import nothing more than a mere personal privilege, to the inhabitants specified ; or do they imply an annexation of the lands, lying *North* of the highway in question ? Or, in other words, did the framers of

these votes contemplate a mere temporary arrangement, to be confined, in its operation, to the inhabitants then in being; or did they contemplate a permanent and territorial annexation ? It is admitted, and indeed claimed, in behalf of the plaintiff in error, that school districts are, and ever have been, corporations with territorial limits. Now, in connection with this fact, it should be borne in mind, that in the year 1799, an act was passed, by the legislature, authorizing and empowering two or more adjoining societies, whenever it might be necessary and convenient, to form a district out of said societies, by vote ; and the same, by a like vote, to alter or dissolve. *Stat.* 582. *tit.* 141. *c.* 1. *s.* 2. (ed. 1808.)

Now, to attempt to form a district, and yet to give to that district no territorial limits, would be most manifestly absurd. And it would be as absurd to attempt to alter a district, without altering the territory of that district, as it would be to attempt to form a new district without any territory whatever. Both were equally removed from the contemplation of the legislature. Now, it was in furtherance of this act, and in conformity to its provisions, that the votes now under consideration were passed. And can any other inference be drawn, than that these societies intended a proper and legitimate exercise of their powers, under this act ?

Again ; if we look at the language of these votes, and at the obvious import of the terms employed, the same conclusion follows.

The first is the vote of the *East-Haven* school society ; and it is in these terms : That the inhabitants living *North* of said highway, *have liberty to join with, and make a part of the next adjoining district.* The vote of *North Haven* society gives to these inhabitants liberty *to join themselves to said district.* The term *district,* as has already been remarked, is a territorial term. And when the inhabitants, occupying a particular territory, *are joined to, and make a part of, a school district,* is not the territory which they occupy, of course, annexed to that district ? Can a man be said to belong to one district, while the house that he occupies, and the land that is under his feet, belongs to another district ? Or, in other words, can he be a non-resident in the district *to which he belongs, and of which he makes* a part ? The confusion and the in-

New-Haven,
July, 1836.

Rowe
v.
Blakeslee.

justice which would result from such a principle, are too obvious to require elucidation.

It is surely not necessary that the term *territory* should be expressly used, in order to its annexation. The general law incorporating boroughs, merely provides, that the inhabitants living within certain limits, shall be incorporated. *Stat.* 95. *tit.* 11. *c.* 1. Nothing is said of the territory. And so also of cities. *Stat.* 108. *tit.* 15. *c.* 1. And was it ever doubted, that these terms are strictly territorial?

But it is urged, that although it was the intention of these societies, that the territory in question should be annexed to the *North-Haven* district; yet their votes are wholly inoperative to produce this effect, as they give no boundaries, and assign no local limits. This is the only fact of the case, in regard to which we have entertained any doubt; and we think, upon reflection, that this difficulty is not insuperable.

This objection, it should be remarked, proceeds not upon the ground that the territory is not mentioned, but that it is not sufficiently defined. Suppose, then, the vote had been, that all the territory, (with the inhabitants thereon,) lying *North* of the highway from *Harrison's* house to the little bridge, should be set off, and annexed to the *North-Haven* district; can we say, that such a vote would be void, on the ground that no certain limits were given? The length, course and *termini* of the highway are given. It is also found, that the *North-Haven* district adjoins this territory on the *North*. Now, would not right lines drawn from this *terminus* of the highway, to the *North-Haven* district, sufficiently designate the territory annexed? And would not such be the fair import of the vote?

On these grounds, then, we have come to the conclusion, that the land in question is not within the limits of the district imposing the tax; and, of course, that the imposition of the tax was illegal.

This conclusion renders it unnecessary to determine the other question presented upon this record. As, however, it is one of great practical importance, and has been very fully and ably discussed, we think we ought not to refrain from expressing our opinion upon the point; and the more so, as it is one, upon which we entertain no doubt.

The question is this: are the lands of a non-resident proprietor subject to taxation in the school district where they lie?

And the determination of this question depends on a sound construction of our own statute.

It is admitted, that previous to the revision of 1821, a distinction was made between personal property and real estate, in reference to the place where they were respectively to be taxed ; personal property, wherever it might be, being subject to taxation in the town where the owner lived ; while land was taxable in the town where it lay.    *Stat.* 562, 3. 380. 571. 633. (ed. 1808.)

It is also admitted, that this rule extended to the minor incorporations ; and that it embraced school districts, as well as others.    *Allen* v. *Gleason,* 4 *Day* 376.   The question then arises, whether this distinction is done away, by the revision of 1821 ?   And whether the law is now so that real estate is liable to be taxed only in the town where the owner lives ?

It may here be remarked, that the mode of taxation recognised by the statutes already alluded to, had been in operation for more than a century ;—and it may well be asked, what motive could have influenced the legislature to introduce this entire innovation into the system ?   Was it demanded by any principle of justice, or by any considerations of expediency ? The object and spirit of the law, would, obviously, seem to require, that the property of all persons, whether residents of the corporation or not, should bear its due proportion of the burthens imposed for the common benefit of the corporation. This most just and salutary principle is effectually contravened, by the doctrine now contended for.   And the inconveniences of the system are no less glaring than its injustice.   It would, to say the least, be very inconvenient for a board of assessors living in *Stonington,* to put a valuation upon a farm of land lying in *Barkhamsted.*   Did the legislature intend any such thing ?

But it is said, the construction contended for, is imperiously demanded, by the language of the statute.   It requires that the inhabitants of the respective towns, shall furnish to the assessors correct lists *of all their property liable to be assessed and valued.*   And this provision of the statute, it is said, embraces property of all descriptions and wherever situated.   Does not the argument prove too much ?   A man owns lands in a neighbouring state, which, by the laws of that state, are liable to be assessed and valued.   Are these lands to be embraced in

his assessment list? It will hardly be pretended. And yet the literal language of the statute is broad enough to cover such a case.

Did the framers of the law, it may be asked, intend any thing more than that the assessors should be furnished with correct lists of all property liable *by them* to be assessed and valued?

But whatever doubts we might entertain, were this a statute of recent enactment, and were a construction now, for the first time, to be put upon it; yet, under existing circumstances, we do not feel called upon to enter into a very critical analysis of its phraseology. It has received a practical construction, which we are not disposed, and which, indeed, we do not feel at liberty to overturn. The statute has been in existence for fifteen years; and it is believed, that the practice under it, throughout the state, has been uniform. It is believed to have been well understood, not only by the profession, but by the community generally, that lands, now, as formerly, are to be taxed in the town where they are situated; and that the construction claimed, is now put forward for the first time. We feel bound to adhere to the practical construction, which has been given to this statute; and we do so the more readily, as we believe that construction to be in entire consonance with the great principles of justice and equity; and that to break in upon it, would be productive of extensive mischief, and of mischief only.

But upon the other ground taken in the case, we would advise, that the judgment of the county court be affirmed.

In this opinion the other Judges concurred.

Judgment to be affirmed.