Avery *v.* Brown.

---

# SUPREME COURT OF ERRORS.

## NEW LONDON COUNTY, MARCH TERM, 1863.

Present,

HINMAN, C. J., SANFORD, BUTLER AND DUTTON, Js.

---

### CHARLES AVERY *vs.* ROBERT BROWN.

A lessee gave a lessor a note for the agreed rent of a farm which the former was to occupy, and a mortgage to secure it. Held, in a suit for a forelosure, that the lessee could recoup the damage which he had sustained by reason of the false representations of the lessor as to the quantity and productiveness of the farm.

The policy of the law is always to prevent unnecessary litigation, and whenever in a pending suit entire justice can be done to both parties by an adjustment of their mutual claims, without a violation of any of the settled rules or forms of law, it ought to be done.

The unliquidated character of the defendant's damage is no objection, so long as the amount can be shown by evidence. There is no more difficulty in his proving the amount of such damage by way of reducing the plaintiff's claim, than in proving its amount in an independent suit brought by him as plaintiff.

The application of the defendant's damages to the claim of the plaintiff is by way of reduction, and not as a set-off. That term is properly applicable only where the claim set off grows out of a transaction independent of the contract sued upon.

The case of *Pulsifer* v. *Hotchkiss,* 12 Conn., 234, commented on.

Avery *v.* Brown.

BILL for a foreclosure. The note secured by the mortgage was given in part for the rent of a farm leased by the petitioner to the respondent, and in part for personal property on the farm sold. The respondent in his answer alleged this fact, and that he had been induced to pay so large a rent for the farm by the false representations made at the time by the petitioner as to the quantity, quality and productiveness of the farm; and he prayed that the amount of damage sustained by him by reason thereof might be ascertained by the court and applied in reduction of the petitioner's claim upon the note and mortgage, and a decree taken for the balance only. The respondent had occupied the farm under the lease and had appropriated to his own use the personal property sold. On the hearing of the case before a committee to whom it was referred, the respondent offered evidence to prove that the petitioner at the time when the note was given fraudulently represented to him that the farm contained more land than it was described in the lease as containing, while it in fact contained much less—that it would yield seventy-five tons of good hay annually, while it would in fact yield only twelve tons—and that it would keep from forty to fifty head of cattle, while it would not in fact keep half that number. To this evidence the petitioner objected and the committee excluded it. The respondent remonstrated against the acceptance of the report on this ground, and the question whether the remonstrance should be sustained was reserved by the superior court for the advice of this court.

*Halsey* and *Converse*, with whom was *Waller*, in support of the remonstrance, cited *Cook* v. *Mix*, 11 Conn., 432; *McAlpin* v. *Lee*, 12 id., 129; *Andrews* v. *Wheaton*, 23 id., 112; *Gold* v. *Ives*, 29 id., 119; *Platt* v. *Brown*, 30 id., 336; *Withers* v. *Greene*, 9 How., 213; *Van Buren* v. *Digges*, 11 id., 461; *Herbert* v. *Ford*, 29 Maine, 546; *Rogers* v. *Humphrey*, 39 id., 382; *Dodge* v. *Tileston*, 12 Pick., 328; *Harrington* v. *Stratton*, 22 id., 510; *Perley* v. *Balch*, 23 id., 283; *Goodwin* v. *Morse*, 9 Met., 278; *Cook* v. *Castner*, 9 Cush., 277; *M'Alister* v. *Reab*, 4 Wend., 483; *Reab* v.

*M'Alister*, 8 id., 109 ; *Ives* v. *Van Epps*, 22 id., 155 ; *Allaire* v. *Whitney*, 1 Hill, 484 ; *Batterman* v. *Pierce*, 3 id., 171 ; *Van Epps* v. *Harrison*, 5 id., 63 ; *Mayor of Albany* v. *Trowbridge*, id., 71 ; *Barber* v. *Rose*, id., 76 ; *Trowbridge* v. *Mayor of Albany*, id., 429 ; *Whitney* v. *Allaire*, 1 Comst., 305 ; *Mayor of New York* v. *Mabie*, 3 Kern., 151 ; *Steamboat Wellsville* v. *Geisse*, 3 Ohio S. R., 333 ; *Upton* v. *Julian*, 7 id., 95 ; *Stow* v. *Yarwood*, 14 Ill., 424 ; *Houston* v. *Young*, 7 Ind., 200 ; *House* v. *Marshall*, 18 Misso., 369 ; *Culver* v. *Blake*, 6 B. Monr., 528 ; *Hatchett* v. *Gibson*, 13 Ala., 587 ; *Mondell* v. *Steel*, 8 Mees. & Wels., 858.

*Lippitt* and *Pratt*, with whom was *Wait*, contra, cited *Pulsifer* v. *Hotchkiss*, 12 Conn., 234 ; *Riddle* v. *Gage*, 37 N. Hamp., 519 ; *Drew* v. *Towle*, 7 Foster, 412 ; *Smith* v. *Smith*, 30 Verm., 139 ; *Elminger* v. *Drew*, 4 McLean, 388 ; *Washburn* v. *Picot*, 3 Dev. (Law,) 390 ; *Day* v. *Nix*, 9 J. B. Moore, 159 ; *Trickey* v. *Larne*, 6 Mees. & Wels., 278 ; *Sully* v. *Frean*, 29 Eng. Law & Eq., 404 ; *Warwick* v. *Nairn*, 32 id., 493 ; *Loring* v. *Otis*, 7 Gray, 563 ; *Warner* v. *Bacon*, 8 id., 397 ; Sedgw. on Damages, 443, and cases there cited.

SANFORD, J. This is a bill to foreclose a mortgage given to secure the payment of a note for the rent of a farm leased and personal property sold by the petitioner to the respondent at the time the note and mortgage were executed. The respondent occupied the farm under the lease, and appropriated the personal property to his own use.

Upon the hearing before a committee, the respondent offered to prove that the note was made for a much larger sum than it ought to have been, and that he was induced to make it so by the false representations of the petitioner regarding the contents, quality and productiveness of the farm ; and he claimed that the damages which he had sustained by reason of such false representations and consequent failure of consideration, should be deducted from the note, and a decree taken for the balance only. The petitioner objected to the evidence, and the committee held it inadmissible.

Whether that ruling was right or not, is the question reserved for our consideration and advice.

The policy of the law is always to prevent unnecessary litigation, and where in a pending suit entire justice can be done to both of the parties before the court, by the ascertainment and set-off of their mutual claims against each other, without a violation of any of the settled rules or forms of law, such set-off ought always to be made.

Where, upon the sale of property, a contract has been made on one side regarding the quality or value of the property, and on the other to pay the price agreed on as the consideration of the sale, it is obviously expedient as well as just, if the seller's contract has been broken and the value of the property diminished by reason of such breach, that he should not be allowed by suit to enforce the full payment of the stipulated price, but that the damages which the defendant has sustained in consequence of the plaintiff's violation of that identical contract on which the plaintiff sues, should in some way be applied in reduction of the plaintiff's claim. And so where the buyer, not having paid the purchase money, sues the seller upon his part of the contract regarding the quality or value of the property, the price of it remaining unpaid should in the same manner be deducted from the plaintiff's damages. Thus complete justice is effected in one suit, and without the expenses and delays of two.

And the propriety of the application of the principle thus illustrated to a case where one of the parties has been induced by the fraudulent misrepresentations of the other to assume the obligation on which the suit is brought, is even more strikingly apparent.

These are not cases for the application of the law of set-off under the statute. A set-off is made where the defendant has a debt against the plaintiff arising out of a transaction independent of the contract on which the plaintiff sues, and desires to avail himself of that debt, in the existing suit, either to reduce the plaintiff's recovery, or to defeat it altogether, and, as the case may be, to recover a judgment in his own favor for a balance. In the cases put, the damages which the

defendant claims grow out of the same transaction on which the plaintiff founds his suit; the respective undertakings of the parties on one side and the other together make the contract. So in the case before us, on one side was an agreement to lease and sell, and on the other to hire, purchase and pay the price. The stipulations on one side being the consideration for the stipulations on the other, it follows that a breach of the stipulations on the plaintiff's part must in equity and justice affect the measure of his right to recover damages for the defendant's breach.

The plaintiff claims that the defendant undertook to pay him the money specified in the note, and by not paying it has broken his undertaking; while the defendant claims that there was on the plaintiff's part an implied undertaking that the farm, for the rent of which the note was given, was what the plaintiff represented it to be in quantity and quality, and that the representation was false and fraudulent and the plaintiff's undertaking broken; and he claims that his damages consequent upon such breach, should be deducted from the note. The intrinsic justice and equity of the defendant's claim is manifest, and by a court of equity, at any rate, it should be recognized and enforced.

"In general," says Professor Parsons, in his treatise on the law of contracts, Vol. 2, p. 246, "a defendant may deduct from the plaintiff's claim all just demands or claims owned by him, or payments made by him, in the very same transaction, or even in other but closely connected transactions. They must however be so connected as fairly to authorize the defendant to say that he does not owe the plaintiff on that cause of action so much as he seeks; and not that he ought not to pay the plaintiff so much, because on another cause of action the plaintiff owes him. If he can so present and use his claims, he diminishes the plaintiff's claim by way of reduction."

We do not feel called upon to examine minutely all the cases cited by the counsel from the reports of our sister states and of England, because we are satisfied that our own uniform practice on the circuit and our decisions by the court of the last resort upon this subject have settled the law of Connecti-

cut, and settled it too in conformity with the soundest principles of policy and justice.

In the case of *Moore* v. *Ellsworth*, 3 Conn., 483, decided in 1821, Chief Justice Hosmer, in giving the opinion of the court, said : " To constitute a *defense* to an action on contract the fraud must be total ; but if the consideration has not been entirely performed, this may be taken into consideration in estimating damages." In *Cook* v. *Mix*, 11 Conn., 434, Bissell, J., said : " We suppose it to be perfectly well settled that where a total failure of consideration is shown, it is an answer to the action." " Whatever may have been the decisions in some of the states, we suppose it to be the settled doctrine in Connecticut, that a partial failure of consideration may be shown to the point of damages." " There is no well grounded distinction between a sale of personal property with warranty (express or implied) and that of real estate with covenants. The same reason exists for the application of the rule in the one case as in the other." In *McAlpine* v. *Lee*, 12 Conn., 129, Church, J., says : " In an action to recover the stipulated price of property sold which proves inferior in quality to that bargained for, an allowance to the defendant may be made in the assessment of damages of such an amount as constitutes the difference between the price agreed and the value of the estate sold. And the rule is the same whether the action be for goods sold and delivered, or upon the bill or note given for the stipulated price." The case of *Andrews* v. *Wheaton*, 23 Conn., 112, was an action on a note given for the price of a quantity of hay. The hay was bought by the defendant of one Williams, the owner, and the note was made payable and delivered to the plaintiff by Williams'·request, the plaintiff knowing for what it was given. Williams misrepresented the quality and quantity of the hay. Andrews removed and used part of it, but finding it did not answer the recommendation in regard to quality or quantity, refused to receive the residue. The plaintiff's counsel cited the case of *Pulsifer* v. *Hotchkiss*, 12 Conn., 234, to show that the plaintiff was entitled to judgment for the whole amount of the note, and that the defendant's only remedy was by a cross action

for the misrepresentation; but Ellsworth, J., giving the opinion of the court, said: " At this day a cross action to obtain relief in such a case as this is not believed to be necessary." And the court decided that the plaintiff was entitled to recover for the hay which the defendant took away and used, and as to the rest, that the consideration for the note had failed, and the plaintiff could not recover it. We see no difference in principle between that case and the one now before us. The case of *Pulsifer* v. *Hotchkiss*, above referred to, has sometimes been misunderstood, and we think does not sustain the position to support which it was cited by the counsel in the case before us. It was not in that case decided that the defendant could take *no advantage* of the plaintiff's false and fraudulent representations and the consequent failure of consideration for the note, because he had not repudiated the contract and restored or offered to restore the consideration, such as it was, to the plaintiff; but only that if the failure of consideration was partial only, and not entire, he could in that particular case take no advantage of such partial failure, because the defendant's damage, or the amount to be deducted from the plaintiff's demand, was merely conjectural, unliquidated, and incapable of liquidation by any known rule. The judge who delivered the opinion of the court does indeed, on page 240, say: " We suppose therefore if a party in his *defense* would avail himself of a fraud in the consideration of a bill or note, though it be but partial, he can only do so by repudiating the contract altogether, and by offering to restore the entire consideration affected by the fraud." But we think it obvious from the context that the judge means only that the defendant can not *defeat the suit* by proving the fraud, unless he has repudiated the contract altogether, and offered to restore the consideration. The judge was then considering the effect of a fraudulent representation affecting the value of the property sold as affording a *complete defense*, and therefore in the same connection he says: " If the defendant can be permitted to prove that any part of an entire consideration is fraudulent, he proves the whole contract founded thereon to be at least voidable, and he ought not to be permitted to treat the contract

as valid and subsisting for one purpose, while he seeks to avoid its obligations for another." Again he says, on the same page and the next: " But still the defendant insists on another principle—that waiving all claims for fraud, *as such*, here has been at least a partial failure of consideration of the note in suit." Again: " The general principle, that a partial failure of consideration, whether the action be for the price of property sold or upon a bill or note given for such price, may go to reduce the damages in such action, has been fully recognized and is now well established in this court." And on page 238 the judge says: " If the defendant had repudiated the contract upon discovering the fraud and had offered to restore the consideration, such as it was, to the plaintiff, or if, *there being no fraud*, the partial failure of the consideration of the note had been of a sum liquidated, or capable of liquidation by any known rule, the defendant's claim could not be resisted." Here again the judge does not mean, as the counsel assume, that if the partial failure of consideration was owing to the plaintiff's fraud no advantage could be taken of it to reduce the plaintiff's recovery, because the defendant had not repudiated the contract and restored the consideration, but because the amount to be deducted was unliquidated and incapable of liquidation by any known rule. The defendant had requested the court to charge the jury that they might *estimate* the value of the right for which the note was given and deduct from the note as much as in *their opinion* the sum agreed to be paid and included in the note exceeded the actual value, and it was to that claim of the defendant that the attention of the judge in giving the opinion of the court in this part of the case was directed. Had the words " *there being no fraud* " been omitted from the sentence last quoted, the meaning of the judge and of the court would have been more succinctly if not more accurately expressed. That we are right in this interpretation of the opinion we think is manifest from what is said in the very next paragraph, that " now it is considered not only in England and in our sister states, but here also, that such partial fraud is a subject of consideration in an action upon a note or other contract."

We understand the doctrine of that case upon this point to be substantially the same as was promulgated by this court in the more recent case of *Gold* v. *Ives*, 29 Conn., 119, in which we say, (p. 124:) "If by the plaintiff's breach of contract the defendant had sustained damages of which he could give no satisfactory evidence, he was indeed unfortunate, but we believe no court has gone further than to allow the jury to make a set-off of such damages as are proved. To allow them to conjecture would be as dangerous as it would be unprecedented."

The impossibility of ascertaining by evidence the amount of the defendant's damages, which prevented the application of those damages in reduction of the plaintiff's note in *Pulsifer* v. *Hotchkiss*, does not occur in the case at bar.

When personal property is sold with a warranty of soundness and proves unsound, and suit is brought for the price of it, the defendant's damages by reason of such unsoundness are in one sense unliquidated and uncertain, but *id certum est quod certum reddi potest.* Witnesses who know the market value of such property can testify what the value of the article in question is in fact, and what it would have been had the warranty been true, and then the difference constitutes the damage which should be deducted from the stipulated price. There is in theory no more real difficulty in ascertaining the difference between the value of the rent of a farm of one hundred acres and that of one of fifty, than between the value of one hundred bushels of wheat and that of fifty ; no more difficulty in ascertaining the difference between the value of the rent of a farm which will produce seventy-five tons of hay and that of one which will produce twelve tons only, than there is in ascertaining the difference between the value of a horse which is proved unsound and what his value would have been had he been sound. In all these cases witnesses who know the property, and the state of the market for it, will give the rule by which the amount of damages to be deducted from the stipulated price can be ascertained by calculation ; and the principle applies where the subject of the contract is real estate, as well as where it is personal property.

At any rate there is no more difficulty in showing by evidence the damages which a party has sustained by reason of another's fraud or breach of contract in relation to the quantity, quality or value of property of either kind, when as a defendant he seeks to have that damage applied in reduction of the plaintiff's claim against him for the stipulated price of such property, than there is when the purchaser sues for the recovery of the same damages in another suit.

The committee erred in rejecting the offered evidence, and therefore the report ought not to be received.

In this opinion the other judges concurred.