[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
The matter before the court is the substituted plaintiffs motion for summary judgment as to the defendant's counterclaims. The motion as filed also seeks summary judgment as to setoffs filed by the defendant homeowners. The case presents a somewhat complicated procedural history. The defendant Grills became indebted to Union Trust Company for $70,000 in 1989. They signed a promissory note and, to secure the note, mortgaged their home to Union Trust. Union Trust, by a series of name changes and mergers, became First Union National Bank. That entity owned the note and mortgage and, in September, 1997, brought suit against the Grills claiming the note and mortgage were in default by virtue of nonpayment of installments. By way of remedy, the plaintiff First Union moved to foreclose on the mortgage, asked for immediate possession and a deficiency judgment, the appointment of a receiver, reasonable attorney's fees and other equitable relief as deemed appropriate.
On November 7, 1997, the defendants filed a disclosure of defense to the effect that the plaintiff, i.e. First Union, represented there was a modification agreement that was to be effective and the Grills were not to make payments until notified. On the same date, the defendants filed an answer wherein, among other things, they denied paragraph 6 of the complaint, which alleged that the note and mortgage were "now in default by virtue of nonpayment of the instalments of principal and interest due on April 1, 1995, and each and every month thereafter . . ." No special defenses were filed, but there were a series of setoffs all based on the alleged instructions to the Grills not to make payments until notified. The first setoff claimed the alleged instructions violated the covenant CT Page 11246 of good faith and fair dealing. The second setoff made the same claim based on a violation of § 42a-1-203 of the General Statutes; the third setoff alleged the instructions constituted a negligent misrepresentation; the fourth, intentional misrepresentation. The fifth setoff and sixth setoff each asserted violations of the Connecticut Unfair Trade Practices Act (CUTPA), § 42a-110 (b) a, et. seq. based on intentional misrepresentation and negligent misrepresentation resulting from the instructions not to pay. In the seventh setoff it is claimed that the plaintiff is estopped by laches due to the instructions it gave the Grills not to make payments.
The Grills also filed three counterclaims all based on the same factual allegation — the plaintiff instructed them not to make payments until directed to do so. The first counterclaim states the plaintiff breached the covenant of good faith and fair dealing. The second makes the same allegation and refers to § 42a-1-203 of the General Statutes. The third lies in negligent misrepresentation. Monetary damages and attorney's fees are requested based on the counterclaims.
The "plaintiff" referred to in all these just-mentioned pleadings is the First Union National Bank. The substituted plaintiff, EMC Mortgage Corporation, came into this case in the following way: EMC Mortgage Corporation (EMC) purchased the note and the mortgage as part of a bulk transfer of a pool of loans in late 1997. The note and mortgage were not actually transferred from First Union to EMC until May 28, 1998. The foregoing representation is made by way of affidavit by an employee of EMC and is not contested.
On September 3, 1998, EMC filed a motion to substitute itself as plaintiff. An objection to this motion was filed September 10th. Neither of these pleadings were acted upon.
On September 21, 1998, the defendants filed a "Revised Counter Claims and Set Offs." The same setoffs as alleged in the November 7, 1997 pleading are claimed, but three new counterclaims are made.
The new counterclaims, as all the counterclaims, rest on the factual allegation by the Grills that "the plaintiff" instructed them not to make payments until instructed to do so. The new fourth counterclaim is based on intentional misrepresentation, the fifth and sixth counterclaims allege CUTPA violations — one based on negligent misrepresentation, the next on intentional misrepresentation. Nowhere in the revised pleading is EMC mentioned. Apparently, EMC was not a party at the time the just referred to pleading was filed because on September 23, 1998, EMC filed another motion to have itself substituted as plaintiff. The file does not reflect that this motion was acted upon, but CT Page 11247 somehow perseverance paid off because a judge on October 22, 1998 denied the defendant's objection to EMC's motion to be substituted as plaintiff. But a motion to reargue the motion to substitute was then granted. EMC then felt the need to file a new motion to substitute which was finally granted June 1, 1999.
Other interesting procedural events occurred, but one in particular should be noted — the defendants had a motion for nonsuit granted on October 4, 1999, and this motion has not been vacated. The court will now discuss the summary judgment motion.
The rules that apply for deciding a motion for summary judgment are well known. If there is a genuine issue of material fact, the court cannot decide it, but if the moving party is entitled to judgment as a matter of law the motion should be granted.
 (1)
It seems clear that EMC is not a holder in due course under §42a-3-302 (a) (vi) of the General Statutes. A "holder in due course" under that statutory subsection means a "holder" who took the instrument "without notice that any party has a defense or claim in recoupment described in § 42a-3-305a." Apparently before it even acquired an interest in the note and certainly before the note was transferred to EMC by First Union, the Grills had filed a disclosure of defense. The setoffs and counterclaims accompanying the answer certainly would have alerted EMC to a variety of defenses; the answer itself denied default and the theme throughout the pleadings filed by the Grills on November 7, 1997 was that the Grills claimed they had been instructed not to make payments on the debt until further notified. Section 42a-305 (b) seems to indicate, by implication, that the types of defenses suggested by the November 7th pleadings, even if not articulated as defenses, could be asserted against EMC's attempt to enforce the note and its rights under the terms of the loan agreement just as they could have been asserted against First Union. Not being a holder in due course EMC would not have any greater rights in these respects that First Union would have had. cf. Rosen v. Culligan, 19 Conn. Sup. 122, 124 (1954).
From this premise, however, the Grills want to go much further than the mere right to assert defenses that could have properly been asserted against First Union. At page 8 of their brief, the Grills say, "But EMC Mortgage is an assignee who is not a holder in due course and therefore it is First Union for the purposes of defending counterclaims and special defenses."
"Defenses" are not counterclaims, cf. New Idea Pattern Co. v. Whelan, CT Page 1124875 Conn. 455, 457 (1903). A counterclaim is an affirmative demand for money damages against a party who it is claimed caused damages to a plaintiff by its actions. In other words, a counterclaim is pleaded in the same way as a complaint is pleaded. Home Oil Co. v. Todd, 195 Conn. 333,341 (1985). In Town of Wallingford v. Glen Valley Associates, Inc.,190 Conn. 158, 160 (1983), the court said:
 "(A) counterclaim is a cause of action existing in favor of the defendant against the plaintiff and in which the defendant might have secured affirmative relief had he sued the plaintiff in a separate action. . . . Practice Book § 116 provides that a counterclaim must arise out of the transaction which is the subject of the plaintiffs complaint." (Practice Book § 116 is now Practice Book § 10-10.)
Abstractly considered, it is certainly true that the claims made in the counterclaim arise out of the transaction which is the subject of the complaint, but no valid "counterclaim" can be asserted by the Grills against EMC because they have no ascertainable claim in their "favor" against EMC. None of the allegations of the counterclaims concern actions taken by EMC against the Grills; they all involve alleged improper actions taken by First Union prior to the assignment of the note to EMC. Referring to the language of the Glen Valley case, it cannot be said that any purported counterclaim against EMC is a claim in which the Grills "might have secured affirmative relief had (they) sued the plaintiff (here, EMC) in a separate action. . . ." id. at p. 160.
The Grills do not contest in this motion EMC's characterization of the factual allegations of the counterclaim as involving only First Union and not EMC. The point is that, given these allegations, there is no understandable way that the Grills could secure affirmative relief against EMC if they sued EMC separately.
Merely because EMC cannot avoid the defenses that could have been used against First Union because EMC may not be a holder in due course does not mean that it can be subjected to monetary liability to a party not injured by EMC's actions. Furthermore, the Grills can assert these defenses if properly pleaded to EMC's action on the note and can bring suit against First Union for affirmative relief if they so desire, so it is difficult to see how the Grills are prejudiced in their assertion of any rights that may have accrued to them by the alleged wrongful actions of First Union.
In this brief, the Grills argue "Mortgagees should not be able to defeat valid defenses by selling a bad loan to a third party which then CT Page 11249 can foreclose while the defendants are left to sue the mortgagee in another action while homeless." (Page 8 of 3/2/01 brief.)
The court agrees — the defenses that could have been asserted against First Union can be asserted against EMC if it is not a holder in due course and First Union can be sued for its actions. That the Grills are not left facing the dilemma their brief suggests is underlined by the fact that as far back as the November 7, 1997 answer, they. denied they were in default. If they can prevail on that position they will have defeated the action adopted by EMC and will still have the option to sue First Union.
 (2)
In its motion for summary judgment, EMC also requested that the motion apply to the setoffs. At oral argument, EMC seemed to press its motion only as it applied to the counterclaim but did not formally withdraw the motion as to the setoffs. Section 17-44 of the Practice Book defines the scope of the remedy by way of summary judgment. Except for administrative appeals not enumerated in Practice Book § 14-7, a party may move for summary judgment "in any action." Section 17-44 goes on to say "that any party may move for summary judgment upon any counterclaim or cross complaint as if it were an independent action." Setoffs are not specifically mentioned, but the court concludes summary judgment procedure can be used against setoffs.
As noted by Judge Ballen in Program Plus, Inc., et al v. Bonazzo, et al, 8 Conn. L. Rptr. 575, 576 (1993): "A setoff is defined as `a counterclaim demand which defendant holds against plaintiff arising out of a transaction extrinsic of plaintiffs cause of action . . .' Black's Law Dictionary (5th Ed. 1979) (emphasis added)." The courts use the terms setoff and counterclaim interchangeably as regards the ultimate nature of the relief sought. In Bank of Boston Connecticut v. Avon Meadow Assn.,40 Conn. App. 536, 541 (1996), the court said that: "The fact that the defendants' counterclaim in this case might give rise to damages in excess of those due the plaintiff does not bar it from being a setoff." As noted in Northwestern Electric, Inc. v. Rozbicki, 6 Conn. App. 417
(1986), apart from the fact that a counterclaim must arise out of the same transaction described in the complaint while a setoff arises from a separate transaction, "the title of the pleading is not controlling. The issue is rather whether sufficient facts are pleaded that would allow recovery either as a setoff or a counterclaim," id. p. 426. In any event, for purposes of Practice Book § 17-44, a setoff is a subspecies of counterclaims, there does not appear to be any rational reason to treat them differently in deciding the scope of the summary judgment remedy, and that remedy should be liberally interpreted. CT Page 11250
What about the summary judgment as directed toward the setoffs in this case? Procedurally speaking, the alleged setoffs here are not properly setoffs, since it is intrinsic to the notion of setoffs and why they were developed that the claim alleged to be a setoff must be a claim "arising out of a transaction independent of the contract on which the plaintiff sues," Avery v. Brown, 31 Conn. 398, 401 (1863). See NorthwesternElectric, Inc. v. Rozbicki, supra, at 6 Conn. App. page 427; Savings Bankof New London v. Santaniello, 130 Conn. 206, 210 (1943); Schaefer v.O.K. Tool Co., Inc., 110 Conn. 528, 530 (1930). The matters alleged in the setoffs here clearly arise out of the transaction alleged in the complaint. Also, insofar as the setoffs claim that there was no default because they were instructed not to pay query whether this is not analogous to a defense of payment which is not a setoff but a defense, cf. Elis v. Rogers, 15 Conn. App. 362, 366 (1988).
In any event, there is a more fundamental reason why the setoffs will not lie against EMC. As discussed earlier, a setoff is really a subspecies of counterclaim. Just as a counterclaim will not be against EMC given the allegations of this case, so too setoff should not be permitted given those allegations.
In OCI Mortgage Corp. v. Marchese, 56 Conn. App. 668, 676 (2000), the court said, "The concept of setoff allows entities that owe each othermoney to apply their mutual debts against each other, thus avoiding theabsurdity of making A pay B when B in fact owes it." (Emphasis added by this court.) In Avery v. Brown, supra, the court said that: "A setoff is made where the defendant has a debt against the plaintiff . . ." 31 Conn. at page 401. Discussing the statute permitting setoff the court inPetti v. Balance Rock Associates, 12 Conn. App. 353, 362 (1987), said, "A condition precedent to the application of § 52-139 is that the defendant's claim arise from a debt due by the plaintiff." (Emphasis by this court.) As discussed in the counterclaim portion of this decision, the substituted plaintiff, given the allegations, owes nothing to the Grills and has no debt running to them. The only distinction between any counterclaim and setoff — that the first unlike the latter must arise out of the transaction alleged in the complaint — has no bearing on the issue before the court, which is the question of the viability of either type of claim against a substituted plaintiff like EMC which itself is not alleged to have acted wrongfully.
This is not to say that the defendants cannot raise some of the allegations made in the setoffs in the form of defenses, especially if it is established that EMC is not a holder in due course. Also, EMC would be hard pressed to blanketly object to any amendment to the answer which added appropriate special defenses since the disclosure of defense and CT Page 11251 original November 7, 1997 answer which included counterclaims and setoffs gave fair warning of possible defensive matters. Why shouldn't the liberal view on amendment of complaints which permits additional claims by a plaintiff under the relation back doctrine not apply to the defendants and their right to add defenses given the procedural history of this case?
In any event, with that observation, the court will grant the motion for summary judgment.
Corradino, J.