TAYLOR-FICHTER STEEL CONSTRUCTION CO., INC., Respondent, *v.* NIAGARA FRONTIER BRIDGE COMMISSION, Appellant.

First Department, February 28, 1941.

*Barent L. Visscher* of counsel [*George G. Davidson, Jr.,* and *Allen R. Henderson* with him on the brief; *Hawkins, Delafield & Longfellow,* attorneys], for the appellant.

*M. Carl Levine* of counsel [*David Morgulas* and *Albert Foreman* with him on the brief; *M. Carl Levine, Morgulas & Foreman,* attorneys], for the respondent.

*John J. Bennett, Jr., Attorney-General* [*Henry Epstein* and *John C. Crary, Jr.,* with him on the brief], for The State of New York, as *amicus curiæ.*

CALLAHAN, J. Plaintiff contracted with the defendant to erect the superstructure of two bridges being built over the Niagara

river near Buffalo, N. Y. Another contractor was to erect the supporting substructures consisting of abutments and piers. Plaintiff was paid its full contract price and some conceded extras. It nevertheless brought this action for breach of contract, in which it has recovered substantial damages.

As the issues were submitted to the jury, plaintiff's claim was that it suffered damages by reason of defendant's unlawful interference with its performance of the contract work. The essence of this claim is that whereas plaintiff could have completed its work within a period of fourteen weeks, if permitted to proceed continuously, it was required to spread its work over thirty-seven weeks because of defendant's refusal to postpone the work, plaintiff claiming this was an unlawful interference, which greatly added to the expense of performance.

There were explicit provisions in the contract between the parties that defendant would not be liable for any damage due to delay on the part of the substructure contractor. There were also provisions that all damages due to negligence, nonfeasance or malfeasance on the part of any agent of defendant affecting the work during the progress thereof from any source should be borne by plaintiff. There were further provisions that plaintiff must co-operate with defendant's engineers in co-ordinating their work with that of other contractors. Despite these provisions, plaintiff has been permitted to recover damages on the theory that defendant's engineers directed plaintiff to commence the work before the substructure was sufficiently erected to permit plaintiff to proceed to completion in the shortest period of time that it might have consumed under favorable working conditions.

The damages awarded included items of damage for prolonged retention of machinery and equipment required in connection with the work, and of alleged additional cost of labor for overtime.

Plaintiff claims that defendant's engineers should have granted several requests made by plaintiff to postpone the commencement of the work until the following year, or at least for several months from the time the requests were made, in view of the delay in erecting the substructure, and that the refusal to do so amounted to an unlawful interference with plaintiff for which defendant became liable in damages.

Upon an examination of the record we find that plaintiff's recovery on the basis of unlawful interference was entirely unwarranted in fact or in law.

We might discuss at length the questions as to whether the verdict in this case was against the weight of the evidence, and as to whether the items of damage claimed were sufficiently estab-

lished, but we deem such discussion unnecessary for the reason that we believe that as a matter of law plaintiff was not entitled to recover any of the damages claimed, even if the alleged demands for postponements had been sufficiently established by the proof. We so hold because plaintiff did not establish any legal right to postponement of the work, or prove that a refusal to postpone was actionable as an unlawful interference, and for the further reason that by the very provisions of the contract which plaintiff claims was breached it waived any right to damages based on the acts complained of.

The contract sued on was entered into on September 13, 1933. It provided that plaintiff was to begin work within ten days and would finally complete all its work on May 1, 1935.

Concededly the provisions as to starting work did not refer to actual construction, but to initiating action for the fabricating of steel. The parties also concede that both bridges, which were part of one project connecting an island with the mainland at different points, were to progress together, and were to be built from both ends towards the middle. Thus, the center spans of the bridges were to be finished last.

The contract specifications contained a schedule showing the dates which the substructure contract provided for the completion of the various abutments and piers, but the specifications also provided that plaintiff was to have no claim against the defendant other than for an extension of time to complete because of the failure of the substructure contractor to have any abutment or pier finished on the dates mentioned.

Plaintiff was required to submit for the approval of defendant's engineers a detailed schedule of operations which would insure the completion within the contract period. Plaintiff did submit such a schedule in the fall of 1933. This schedule outlined a plan containing the dates of proposed fabrication of steel, and the dates of the completion of the erection of such steel by plaintiff. The period to be consumed according to the schedule completely contradicts plaintiff's claim that it would have completed its work in fourteen weeks but for the alleged interference. The schedule shows that plaintiff proposed to consume about thirty-five weeks for the erection of the steel. Plaintiff claimed, however, that these dates were entered on the schedule by reason of a stenographer's error. But further examination of the document with reference to the dates of proposed fabrication of steel would indicate that the longer period was contemplated at the time the paper was prepared.

Aside from this contradiction of plaintiff's claim for completion in fourteen weeks, its allegation of interference must rest on some contractual right to a postponement of the work. The written contract contains no such provision. Under its terms plaintiff's only right in the event of delay in the completion of the substructure work was to be an extension of the date of completion. Eventually such an extension was granted, the defendant recognizing the fact that there had been some delay in the erection of the substructure. Defendant waived any claim for the penalty called for in the contract for such delay.

Thus, it is clear that plaintiff received all that it was entitled to by reason of the delay. Unless then there was something implicit in the contract giving it the right to the postponement which plaintiff says it demanded, it may not recover.

Undoubtedly there was implied in a contract of this nature an obligation on the part of defendant that it would not do anything that would unreasonably interfere with the opportunity for plaintiff to proceed with its work in the manner provided by the contract, and to permit plaintiff to carry on that work with reasonable economy and dispatch. This, however, does not mean that such an implied covenant would create a liability on the part of defendant based upon claimed interference merely because there was delay by another contractor employed by the defendant. The contract had express provisions as to what plaintiff's rights were to be in case of delay, and no room was left for implication.

We may inquire, however, into the circumstances under which the alleged requests for postponement were made, to see if their refusal (if they did take place) might be termed an unlawful interference. The contractor who was building the substructure started to build same in 1933. The abutments were to be completed in November, 1933, and the first piers on April 1, 1934. The remaining piers were to be completed on or before August 15, 1934, which was the date set for the last piers supporting the central spans. Plaintiff claims that it first requested postponement of its work about January 15, 1934, because it observed that but little progress had been made with the substructure up to that date. Concededly, it was the fact that winter weather conditions had delayed the substructure contractor, but there were four months remaining at the time of the first alleged demand before plaintiff was called upon to begin its work in erecting the steel; and there was no evidence offered by plaintiff that the substructure contractor might not catch up with its work.

Plaintiff says that this refusal to grant its request for delay was interference. To permit a jury to say that this refusal was

unreasonable at the time would be entirely unjustified on the proof and would be mere speculation.

The second request was made about March 15, 1934, and a third on April 3, 1934. On the first of these dates it appeared that but little further progress had been made with the substructure, adverse weather conditions having continued; but some work had been done in the meantime, and much progress was made between March 15 and April 3, 1934. Plaintiff says that not only was delay refused, but that it was directed to commence work on May 1, 1934. Assuming that these were the facts, would a jury be permitted to say that this decision was such an unreasonable act on the part of defendant's engineers as to amount to an interference with plaintiff's express or implied contract rights? We think not. The duty of defendant's engineers was twofold: They were required to secure performance of the contract, but at the same time required not to unlawfully interfere with plaintiff's rights.

The time necessary to complete a pier, according to the evidence, was less than a month from the date of commencement thereof. The engineers had obtained assurance from the substructure contractor that it would meet a schedule which varies but slightly from the original schedule dates. Assuming that the view that this promise of the substructure contractor would be performed was an optimistic one, we fail to see that this would amount to an interference. The engineers were not required to concede at that time that some delay in the progress of the work would prevent fulfilment of the substructure contractor's promise. Considering all the circumstances, the matter was solely one of judgment, and the fact that it developed that a somewhat longer time was required than expected would amount, at most, to a mistake in the exercise of judgment, but would not amount to an interference. Defendant's engineers were not required to do anything more than refrain from unreasonably interfering with the progress of the work of the plaintiff. They were entitled to use every effort to obtain complete performance by both contractors. They had the interests of the defendant to protect, as well as those of the plaintiff.

To permit a jury in a court of law to say that the action of the defendant's engineers amounted to interference in this situation would be depriving those officers of all discretion, and substituting the judgment of the court for that of the contracting parties.

The next alleged request took place on May 26, 1934. Approximately sixty percentum of the concrete in all the piers had been

poured by that date. The substructure contractor had met with some unexpected conditions on one or two piers which prevented completing them. Despite that, twenty-one of twenty-six piers were completed on one bridge, and a slightly smaller ratio on the other. True, plaintiff was not permitted to work in the manner in which it had been contemplated the performance would be carried on, in that it could not work continuously from the ends towards the middle, but to grant delay of the whole work at that time even for a short period, because of those conditions, might throw the work into the winter months. Delay until 1935, which plaintiff also said it requested, would mean a whole year's loss of time. Again we say that under such circumstances the direction to proceed with the work on the completed piers was but the exercise of judgment, and not an act of unlawful interference.

Plaintiff claims that a further request for delay in June, 1934, was refused. At this time the substructure contractor was faced with unexpected conditions with respect to the subsoil under one of the piers. Defendant agreed to the payment of a larger allowance demanded by the substructure contractor in order to meet these conditions. By doing this, it was expected that any long delay would be avoided. The substructure contractor promised that the payment would avoid any such delay. Could a court say under such circumstances that the refusal to postpone the plaintiff's work would be an arbitrary interference with plaintiff's rights under its contract? We think not. The exercise of the determinations required to be made under such conditions involve solely acts of discretion, and not actionable wrongs, though mistakes might result.

The remaining requests for postponement were made in September, 1934. At that time only the central spans were unfinished. Delay would mean cantilevering the steel for the winter months, which plaintiff conceded, in a letter to defendant asking permission to do overtime work, would be an exceedingly dangerous procedure.

Plaintiff eventually finished the steel superstructure not only within the dates scheduled, but ahead of time. True, it had not finished such work in fourteen continuous weeks, but it had no contract right which guaranteed it the opportunity to do so. Its rights were merely to an extension of time to complete, if it saw fit to ask for same in the event of delay, and the further right of an opportunity to make reasonable progress with its work. When we consider the effect of granting the delays requested, and the fact that the defendant had the right to take all reasonable steps to enforce performance of the contract, we must hold that no legal basis exists for the finding of interference upon proof of this sort.

Plaintiff relies largely on two reported decisions to uphold its claim of unlawful interference in this case. The first decision relied on is *American Bridge Co., Inc.,* v. *State of New York* (245 App. Div. 535 [Third Dept.]). That case is readily distinguishable from the present one for two reasons: (1) The exculpatory provisions of the present contract are much wider than in the cited case, and (2) the conduct on the part of the State in that case, which was held an unlawful interference, has not even a remote resemblance to the acts involved in the present dispute. In the reported case, when the day arrived for the steel contractor to commence erection, it appeared that a pier had shifted and that many months of work would be required before the steel work could proceed. The parties apparently knew that it would be at least three or four months before the condition could be remedied. In fact it was twenty-one months before the steel contractor could go ahead. The defendant, nevertheless, directed the plaintiff in that case to fabricate and produce its steel at once. The court held that such an apparently unreasonable order was an unlawful interference, and permitted damages to be recovered, measured by the cost of storing and of repainting the steel. The case has no application to the present situation, where defendant did nothing more than to exercise judgment under circumstances where the amount of delay, if any, which would be met would be negligible.

The second case is *Mansfield* v. *N. Y. C. & H. R. R. R. Co.* (102 N. Y. 205). There the contract provided that the defendant was to give notice when the foundations were ready. The contractor had five months thereafter to complete. Notice was prematurely given, and this action was held to be an interference with plaintiff's contract rights. What was said in that case concerning the rights implied in behalf of a contractor to prosecute his work to its utmost advantage and economy must be read in the light of the question there being considered. It can have no bearing on the issue as to whether an actionable interference took place in this case.

Therefore, even if plaintiff's claims as to the alleged oral requests for postponement are to be credited, they, nevertheless, did not establish a cause of action. The correspondence and all writings in the case evidence that no such requests were made.

Undoubtedly plaintiff in this case was delayed somewhat in the performance of its work, and was not permitted at all times to work from the ends of the bridge towards the center, and by reason of these circumstances the cost of performance may have been increased somewhat. These were fortuitous circumstances which all contractors are required to face in work of this nature.

To say that the direction on the part of the defendant to proceed as rapidly as possible to meet conditions that existed was an unlawful interference with plaintiff's rights would be entirely unjustified under the circumstances. What occurred here was that plaintiff possibly suffered some loss by reason of delay, but plaintiff expressly waived its right to claim damages by reason of such delay, and it may not recover such losses by the mere expediency of terming this delay " interference."

The judgment should be reversed, with costs, and the complaint dismissed, with costs.

MARTIN, P. J., TOWNLEY, GLENNON and DORE, JJ., concur.

Judgment unanimously reversed, with costs, and the complaint dismissed, with costs.