NORTHWESTERN ELECTRIC, INC. *v.*
ZBIGNIEW S. ROZBICKI
(2161)

DUPONT, C. J., BORDEN and NIGRO, Js.

Argued November 4, 1985—decision released March 11, 1986

*Wesley W. Horton,* with whom, on the brief, were *William A. Conti* and *Joseph J. Poniatowski,* pro hac vice, for the appellant-appellee (defendant).

*John L. Gerardo,* with whom, on the brief, was *William T. Barrante,* for the appellee-appellant (plaintiff).

NIGRO, J. The plaintiff, an electrical contractor, brought this action to recover the unpaid balance on bills for work done at a restaurant known as the Night Watchman, Inc. The trial court concluded that the defendant, the president and sole stockholder in the corporation, was personally liable for the balance. The court awarded $8347.16 to the plaintiff on the com-

plaint, but allowed a setoff in the defendant's favor of $1500 for meat spoilage due to the plaintiff's negligent installation of a switch controlling power to the restaurant's freezer. The court also awarded the defendant $472.83 on his counterclaim for legal services rendered to incorporate the plaintiff. On the final adjusted judgment for the plaintiff of $6374.33, the court awarded 15 percent interest calculated to the date of trial, totaling $2581.47. Both parties have appealed from the trial court's judgment.

The defendant has appealed from that portion of the judgment in favor of the plaintiff. The defendant has withdrawn any claims of error regarding the court's conclusion that he was personally liable for the debt, but presses his claim that the court erred in concluding that the plaintiff had proven, by a fair preponderance of the evidence, the reasonableness of the billing as found in the judgment.

The plaintiff has cross appealed from that portion of the judgment allowing a setoff for meat spoilage. It claims that the court erred in permitting a tort setoff in a contract action where the cause did not arise out of the same transaction and lacked mutuality.

Both parties have appealed from the court's award of 15 percent simple interest on the final judgment. The defendant claims error in the award of any interest or, alternatively, in the award of interest greater than the statutory allowance. The plaintiff, on the other hand, claims that the court erred in failing to award simple interest at the contractual rate of 18 percent, in conformity with the finance charge listed on its billing.

In the memorandum of decision, the trial court made the following findings of fact. The defendant engaged the plaintiff to perform electrical services at a restaurant he was renovating. The agreement was an oral

time and materials contract. The plaintiff commenced work at the restaurant on October 25, 1978, and continued on a steady basis through November, 1979, making a few service calls thereafter until January, 1980. The defendant was, in effect, the general contractor, providing proposed plans and specifications for the work. During working days, he met the plaintiff's foreman at the restaurant where he would then tell the foreman what work he wished to be performed.

The plaintiff billed for the work at an hourly rate of $13.50 for journeymen electricians and $10 for apprentices. All the experts who testified, and the defendant himself, agreed that this was a reasonable rate. The material prices were taken from an electrical manual used nationwide and included a profit and overhead charge. While the plaintiff's record keeping was not businesslike, the plaintiff did submit monthly bills indicating the amount of time and material expended. These bills rarely contained a description of the work done. The plaintiff billed a total of $16,119.38 for time and materials. These billings included finance charges totaling $2175.89. The defendant paid the plaintiff a total of $7651.78, leaving a balance of $8467.60. From the balance, the court deducted $1500 as a setoff for meat spoilage resulting from the plaintiff's negligent installation of a switch to the restaurant's meat freezer. The court also deducted $472.83 for unpaid legal services rendered by the defendant to incorporate the plaintiff. Finally, the court deducted $120.44 for billing shown to be unrelated to the Night Watchman restaurant. The net judgment rendered for the plaintiff totaled $6374.33. To this net sum, the court added $2581.47 in interest, reflecting 15 percent annual simple interest calculated from December 1, 1980, to the date of trial. The final judgment for the plaintiff was $8955.80.

## I

The defendant claims that the trial court's finding as to the number of billable hours was not supported by a preponderance of the evidence. In his attack on the conclusion of the court and its findings, the defendant points to the following evidence. The plaintiff's principal admitted that the number of hours spent on the job was logged by the plaintiff's employees. The plaintiff, however, did not independently verify those hours. The plaintiff's corporate records did not contain any calculation of what work was done on a particular day and how long it took to do a particular job. Some of the bills also included charges for time spent by the plaintiff's principals in reviewing the work of its employees. The defendant testified that some of the billings were received a year after the work had been done. Also, there was conflicting testimony as to the extent of the work done.

Before considering the defendant's allegation concerning the sufficiency of the evidence, we shall address the defendant's argument, made for the first time at oral argument in this court, that we should accept as true the factual allegations made in the defendant's brief, namely, that the number of billable hours was not supported by the record, because the plaintiff's brief failed to cite to evidence in the record to support the findings of the trial court. Instead, the defendant asserts, the plaintiff has relied upon the findings in the memorandum of decision itself.

Usually, when an appellant attacks certain facts as being found without sufficient evidence, and supports that claim in his brief either by citing to contrary evidence in the record or by asserting that a conscientious search of the record indicates no evidence to support the finding, the burden shifts to the appellee to sup-

port the attacked findings by referring in his brief to the supporting evidence in the transcript. *Duksa* v. *Middletown,* 192 Conn. 191, 196 n.4, 472 A.2d 1 (1984); *Jennings* v. *Reale Construction Co.,* 175 Conn. 16, 18–20, 392 A.2d 962 (1978). This is not such a case, however. The defendant's brief essentially pointed to the conflicting evidence on the issue and acknowledged that there was evidence from the plaintiff to support the finding, but argued that the evidence presented by the plaintiff was insufficient because of its lack of specificity and documentary or other backup. Therefore, no specific refutation of the defendant's claim was necessary, although it would have been prudent and more effective appellate advocacy. Additionally, the defendant waited until oral argument to object to the alleged deficiencies in the plaintiff's brief. Although he filed a reply brief, he did not raise therein the procedural claim he made at oral argument.[1] In the interest of justice, therefore, we have chosen to make an independent review of the transcript. See *Jennings* v. *Reale Construction Co.,* supra, 18–19. We now address the substance of the defendant's first claim as to the sufficiency of the evidence.

" 'On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. See Practice Book § 3060D. This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly

---

[1] We note that the counsel who presented oral argument for the defendant did not participate on the defendant's briefs.

erroneous.' *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980). 'We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported.' Id., 222." *Rodriguez* v. *New Haven,* 183 Conn. 473, 476–77, 439 A.2d 421 (1981), as quoted in *Duksa* v. *Middletown,* supra, 205–206.

The following essential findings of the court have not been attacked by the defendant in his brief. The plaintiff was hired under an oral time and materials contract to perform electrical services at the restaurant and did so under the supervision of the defendant who acted as a general contractor. The work involved extensive renovations. The defendant saw the plaintiff's principals on the job site on many occasions but never made any complaints or raised any questions about the work. The plaintiff billed according to its usual rate which was not contested as unreasonable. The plaintiff submitted monthly bills. The defendant accepted these bills without objection until the time this action was commenced and made partial payments against them. Such findings demonstrate, not only the intent of the parties as to the creation and terms of the contract, but also that the plaintiff's performance was in accordance with the contract. *Hydro-Hercules Corporation* v. *Gary Excavating, Inc.,* 166 Conn. 647, 653–54, 353 A.2d 714 (1974).

While there may have been conflicting testimony about the extent of the work and its complexity, the trial court explicitly gave credit to the testimony of the plaintiff's witnesses on this and other issues. "It is futile to assign error involving the weight of testimony or the credibility of witnesses." *Slattery* v. *Maykut,* 176 Conn. 147, 149, 405 A.2d 76 (1978).

Although some of the bills may have included time spent by the principals in reviewing the work of the plaintiff's employees, the trial court have reasonably found that billing for such time was within the contemplation of the parties.

The plaintiff produced slim but sufficient evidence to prove the amount of time and materials rendered. Therefore, the trial court was not required to speculate as to the amount of damages. Proof of damages does not require mathematical certitude. "[M]athematical exactitude in the proof of damages is often impossible, and . . . 'all that can be required is that the evidence, with such certainty as the nature of the particular case may permit, lay a foundation which will enable the trier to make a fair and reasonable estimate.' " (Citation omitted.) *Hedderman* v. *Robert Hall of Waterbury, Inc.,* 145 Conn. 410, 414, 144 A.2d 60 (1958), as quoted in *Dooley* v. *Leo,* 184 Conn. 583, 587, 440 A.2d 236 (1981).

While it was proper for the trial court to award damages based upon the amount indicated on the plaintiff's billings, the court erred in calculating the amount. The court's memorandum of decision indicates that the court began its calculation of damages with a total balance of $16,119.38. This figure represents all of the plaintiff's bills charged to the defendant, including $2175.89 in finance charges. These finance charges were in conformity with the plaintiff's general practice, as noted on its billings, of charging 18 percent annual simple interest on all past due accounts. As we will discuss in more detail later, however, the court did not find that the defendant had agreed, either expressly or impliedly, to pay the finance charges as indicated on the plaintiff's billing. Since there was no finding of an agreement concerning the payment of finance charges, the court should have deducted such charges from its calculation of damages. This the court failed

to do. Instead, the court went on to subtract from $16,119.38, the amount paid by the defendant, $7651.78, leaving a balance of $8467.60. The court found that this figure represented the proper amount of damages on the plaintiff's complaint. In the absence of a finding that the defendant agreed to pay the finance charges contained in the plaintiff's billing, that amount of the billing representing finance charges, $2175.89, should have likewise been deducted, leaving the proper amount of damages at $6291.71 exclusive of statutory prejudgment interest, setoffs and counterclaims.

## II

The plaintiff's cross appeal alleges that the court erred in allowing a setoff for meat spoilage.[2] The facts surrounding the setoff are as follows. In July, 1979, an employee of the restaurant, while closing one night, accidently switched off the power to the freezer when he had intended to turn off the lights in the banquet room. By the time this was discovered, on the following day, all of the meat in the freezer had spoiled. The defendant testified that the meat was valued at $1500. The trial court found that the plaintiff had wired an electrical panel containing switches to both the banquet hall and the meat freezer. Although the plaintiff labeled the switches, he failed to install a lock to prevent the accidental shut off of the switch to the meat freezer. Such a lock costs $2 and is easily installed. The court concluded, from the testimony, that it is usual for switches to important restaurant appliances, such as a meat freezer, to be fitted with a lock.

---

[2] Although the plaintiff objected to the defendant's being allowed to amend his answer to file this "Further Set-Off" on the day trial was to begin, this was within the court's discretion. There is no indication that the plaintiff filed a motion to strike, or asked for a postponement of trial or a delay in order to address this amendment. We find no abuse of discretion. *Smith* v. *New Haven,* 144 Conn. 126, 132–33, 127 A.2d 829 (1956).

The plaintiff claims that the trial court erred in granting the defendant this "Further Set-Off" sounding in tort when the plaintiff's action was in contract, because there was no mutual debt and the claim did not arise out of the same transaction as that involved in the complaint. Traditionally, the distinction between a setoff and a counterclaim centers around whether the claim arises from the same transaction described in the complaint. If the claim involves a debt which is mutual and liquidated, even though it arises from separate transactions, it is characterized as a setoff. See General Statutes § 52-139. If the claim arises out of the same transaction described in the complaint, it is characterized as a counterclaim. *Savings Bank of New London* v. *Santaniello,* 130 Conn. 206, 211, 33 A.2d 126 (1943). The title of the pleading is not controlling. The issue is, rather, whether sufficient facts are pleaded that would allow recovery either as a setoff or as a counterclaim. *Peters Production, Inc.* v. *Dawson,* 182 Conn. 526, 528, 438 A.2d 747 (1980).

Even in the older cases, a counterclaim sounding in tort could be filed in a contract action if " 'the subject-matter of the counterclaim is so connected with the matter in controversy under the original complaint that its consideration is necessary for a full determination of the rights of the parties. *Downing* v. *Wilcox,* 84 Conn. 437, 80 Atl. 288 [1911].' *Schaefer* v. *O.K. Tool Co.,* 110 Conn. 528, 531, 148 A. 330 [1930]." *Springfield-Dewitt Gardens, Inc.* v. *Wood,* 143 Conn. 708, 713, 125 A.2d 488 (1956). A more recent Connecticut case favors the joinder of closely related claims where such joinder serves the interest of judicial economy. *Jackson* v. *Conland,* 171 Conn. 161, 368 A.2d 3 (1976). Such joinder is proper when "the same issues of fact and law are presented by the complaint and the [claim sought to be joined] and . . . separate trials on each of the respective claims would involve a sub-

stantial duplication of effort by the parties and the courts." Id., 166–67. "[T]he trial court's determination as to whether [the claim shall be joined] ought not be disturbed except for an abuse of discretion." Id., 166. Here, where the parties are the same and the damage claimed by the defendant arose out of the plaintiff's performance of the contract alleged in the complaint, we find no abuse of discretion in the trial court proceeding with the "Further Set-Off."

The plaintiff's final claim as to the "Further Set-Off" is that the court had no evidence upon which to postulate a standard of care which the plaintiff breached. To prove his setoff, the defendant had the burden of proving that the plaintiff had done something that an ordinarily prudent electrical contractor would not have done, or had omitted to do something that the ordinarily prudent electrical contractor would have done. The defendant produced Raymond Turri, an electrical contractor, who testified that he would have installed a lock costing $2 and easily affixed to prevent the inadvertent switching off of the freezer circuit located on a panel controlling the ordinary light switches. " 'The plaintiff in all negligence cases may show that better, safer and more practicable devices than those used were available to the defendant.' " *Delmore* v. *Polinsky,* 132 Conn. 28, 31, 42 A.2d 349 (1945). Turri's testimony was adequate to supply a standard by which to measure the plaintiff's duty, especially when it comports with common sense.

III

Both parties allege that the trial court's calculation of prejudgment interest at the rate of 15 percent was erroneous. The plaintiff contends that interest should have been awarded at a contractual rate of 18 percent; the defendant contends that interest should not have

been awarded at all, or, if awarded, was limited to the then statutory rate of 8 percent.

"It is fundamental that '[i]nterest by our law is allowed on the ground of some contract express or implied to pay it, or as damage for the breach of some contract, or the violation of some duty.' " (Citation omitted.) *Ruscito* v. *F-Dyne Electronics Co.,* 177 Conn. 149, 163, 411 A.2d 1371 (1979).

The court did find that the plaintiff's bills contained a notation that a finance charge of 1.5 percent per month would be added to all balances not paid within thirty days, and that the defendant had paid a small finance charge when he reduced the balance then due to zero on January 9, 1979. The court also found that the defendant, in his capacity as an attorney, had advised the plaintiff's principals to include this finance charge on its billing, when he acted to incorporate the plaintiff. The trial court did not conclude, however, that there was an implied agreement to pay finance charges. Rather, the court used these findings to determine "whether the interests of justice require the allowance of interest as damages for the loss of the use of money." The court found that justice required the payment of interest. This finding was clearly within its discretion.

Since there was no finding of an express agreement to pay finance charges of 1.5 percent per month and since the trial court did not conclude that there was an implied agreement to pay such finance charges, but rather concluded that interest should be allowed for the wrongful detention of money only, the court's award of interest was limited by the then statutory rate of 8 percent. General Statutes (Rev. to 1983) § 37-3a. The court was in error in awarding interest at the rate of 15 percent. Additionally, such interest should also have

been computed to the date of judgment rather than to the date of trial. *Vincenzi* v. *Cerro,* 186 Conn. 612, 614, 442 A.2d 1352 (1982).

There is error in part, the judgment is set aside as to the amount of damages awarded in favor of the plaintiff and as to the rate and term of the interest allowed and the case is remanded with direction to correct, in accordance with this opinion, the amount of damages and the amount of interest awarded.

In this opinion the other judges concurred.