### WHITE OAK CORPORATION *v.* DEPARTMENT OF TRANSPORTATION
### (13932)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued November 7, 1990—decision released January 29, 1991

*Edwin A. Lassman,* for the appellant-appellee (plaintiff).

*Lawrence Russ,* assistant attorney general, with whom, was *William J. White,* former assistant attorney general, for the appellee-appellant (defendant).

SHEA, J. This action was brought by a highway construction contractor after it had completed a major highway construction project for the state of Connect-

icut in 1979. The principal issues before us are (1) whether a "no damages for delay" clause in the contract limits the plaintiff's recovery of damages, (2) whether the amount awarded to the plaintiff for idle equipment should be adjusted to reflect lack of wear and tear, and (3) whether the state is liable for prejudgment interest on the amounts due the plaintiff.

On April 17, 1974, the plaintiff, White Oak Corporation (White Oak), a construction company, executed a written contract with the defendant, the state of Connecticut, acting through the department of transportation (DOT), primarily for the construction of Route 72 in New Britain and Berlin. The project was completed in November, 1979. On October 18, 1983,[1] White Oak brought suit under General Statutes § 4-61,[2] claim-

---

[1] Although the project was completed in November, 1979, it was not until November 6, 1981, that the DOT acknowledged completion by issuing its formal "Certificate of Acceptance of Work and Acceptance of Project." The plaintiff's action, filed on October 18, 1984, less than three years from the issuance of the certificate, therefore complied with the limitation period on actions under General Statutes § 4-61. White Oak had previously, on October 25, 1983, delivered to the state a notice of claim, thereby complying with the limitation period on claims under General Statutes § 4-61.

[2] At the time the action was instituted, General Statutes (Rev. to 1983) § 4-61 provided: "ACTIONS AGAINST THE STATE ON HIGHWAY AND PUBLIC WORKS CONTRACTS. Any person, firm or corporation which has entered into a contract with the state, acting through any of its departments, commissions or other agencies, for the design, construction, repair or alteration of any state highway, bridge, building or other public works may, in the event of any disputed claims under such contract, bring an action against the state to the superior court for the judicial district of Hartford-New Britain for the purpose of having such claims determined, provided notice of the general nature of such claims shall have been given in writing to the department administering the contract not later than two years after the acceptance of the work by the agency head evidenced by a certificate of acceptance issued to the contractor. No action shall be brought under this section later than three years from the date of such acceptance of the work by the agency head as so evidenced. Acceptance of an amount offered as final payment shall not preclude any person, firm or corporation from bringing a claim under this section. Such action shall be tried

ing, inter alia, payments allegedly due on the contract with DOT and damages incurred by the plaintiff when DOT allegedly delayed the project's completion. On White Oak's motion made pursuant to General Statutes § 13b-57a[3] the trial court referred the case to a panel of three arbitrators for a finding of subordinate facts.

The parties stipulated that the arbitration panel would also make findings of fact as to the damages, if any. Accordingly, the arbitrators calculated damages on each count of the complaint. They did not, however, determine whether the plaintiff was entitled to interest on these damages, nor did they calculate the amount of interest to be awarded or the date from which the interest would run. Nevertheless, they did set forth the amounts of interest claimed and the rates at which they had been calculated.

The arbitration panel reported its findings of fact to the trial court after modifying them in response to the

---

to the court without a jury. All legal defenses except governmental immunity shall be reserved to the state. Any action brought under this section shall be privileged in respect to assignment for trial upon motion of either party."

[3] At the time the action was instituted, General Statutes (Rev. to 1983) § 13b-57a provided: "REFERENCE BY COURT TO ARBITRATION PANEL. In any action brought under section 4-61 concerning design, construction, repair or alteration of any state highway or bridge, the court shall refer any case pending before such court in which the issues have been closed to a panel of three arbitrators appointed under the construction industry rules of the American Arbitration Association, said arbitrators to hear and report to the court the facts in such case. Each arbitrator shall be compensated in accordance with the rules of the American Arbitration Association and all hearings shall be conducted in accordance with such rules except that the rules of evidence in contested cases as set forth in section 4-178 shall prevail. The arbitrators shall report specifically the facts relevant to the issue and establish (sic) by the evidence and, upon the acceptance of any report, judgment shall be rendered thereon by the court according to law and the facts found. Any arbitrator appointed under this section while engaged in the hearing of such action, shall have the same power and authority over witnesses as the superior court."

parties' motions to correct. Granting only one of the DOT's numerous exceptions, the trial court then corrected the panel's report by incorporating the contract and its accompanying plans into the report as exhibits. As corrected, the report contained the following relevant facts.

The contract required that White Oak complete the project within 1650 days from the starting date and entitled it to receive the sum of $48,644,853.17 for its work. If White Oak failed to complete the work within 1650 days, the contract allowed DOT to deduct from the amount due $1000 per day for each day White Oak was late. DOT ordered White Oak to begin work on or about April 22, 1974, thereby setting a completion date of October 27, 1978. White Oak did not complete the work until November 23, 1979, 392 days late.

In March, 1980, after the project was completed, White Oak asked DOT, pursuant to a provision in the contract, for a retroactive extension of the completion date because the project had been delayed for causes claimed to have been beyond its control.[4] DOT extended the date, but only by 305 days (184 days of excusable delay plus 121 days of "winter shutdown"), to August 28, 1979, leaving a contract overrun of 87 days, which resulted in a payment deduction by DOT of $87,000.

The arbitrators found that all 392 days of delay were caused by factors outside White Oak's control. First, White Oak was prevented from doing excavation work

---

[4] A highway department standard specification that made up part of the contract provided, in pertinent part: "[U]pon receipt of written notice from the Contractor of the existence of causes over which said Contractor has no control and which may delay the completion of the said work, the Commissioner may, at his discretion, extend the period herein before specified for the completion of said work, and in such case the Contractor shall become liable for said liquidated damages for delays commencing from the date on which said extended period shall expire."

from November 1, 1975, until May 5, 1976, when the gas company, Connecticut Natural Gas, finally removed its gas line from Elm Street in New Britain,[5] even though "the plaintiff had reasons to expect that the gas main on Elm Street . . . would be removed upon the installation of the regulator and piping at the intersection of Peck and Short Streets," and even though White Oak made repeated inquiries and requests concerning the removal of the gas line commencing in September, 1974, as soon as that installation was completed. The delay in removal of the gas line prevented White Oak from working on the construction of a bridge, because the contract specifically prohibited it from disturbing the bridge site until the gas line was removed. DOT's delay in furnishing controls for the construction of temporary railroad lines, also required under the contract, caused White Oak additional delay.

The panel found that these delays not only had caused White Oak's failure to meet the contract completion date, but also had resulted in other damages, because the passage of time had increased its labor and general overhead costs. Thus, the panel found that DOT owed White Oak, in addition to the $87,000 it had withheld as liquidated damages, a further amount to compensate White Oak for its losses from these delays.

The arbitration panel found in favor of White Oak on most of its other claims. The panel found that DOT had not been timely in making the periodic payments the contract required when portions of the project were completed or, if not completed, approved by the DOT's engineer. It also found that DOT owed White Oak for additional, unanticipated work that White Oak had per-

---

[5] After the regulators were installed, Connecticut Natural Gas removed part of the line, north of the North Street area, but did not complete the removal.

formed at DOT's request. Finally, the panel found that DOT had overcharged White Oak for gravel White Oak had removed during the project, and owed White Oak reimbursement of the excessive amount deducted from DOT's payments.

In rendering judgment, the trial court accepted all of the factual findings of the arbitration panel but sustained several objections filed by DOT. The court disallowed the award of damages resulting from the gas company delay, reduced the damages allowed for idle equipment resulting from DOT's other delays, and denied White Oak's claim for prejudgment interest. White Oak on appeal challenges these three rulings. We will consider its challenges in that order.

I

As a threshold matter, we note that the trial court's role in reviewing the corrected arbitrators' report was limited to rendering "such judgment as the law requires upon the facts in the report as it may be corrected." Practice Book § 443; see also *Dills* v. *Enfield,* 210 Conn. 705, 713, 557 A.2d 517 (1989) (discussing attorney trial referees). Thus, it was bound by the subordinate facts found by the panel, but was not bound by the arbitrators' legal conclusions, if any. *Dills* v. *Enfield,* supra; *Seal Audio, Inc.* v. *Bozak, Inc.,* 199 Conn. 496, 509–10, 508 A.2d 415 (1986).

The trial court disallowed damages resulting from the gas company delay after DOT objected to the report for its failure to take into account a "no damages for delay" clause in the contract. The clause, contained in special provision 1.05.06 of the contract, stated: "The Contractor shall schedule his operations in such a manner as to minimize interference with the operation of the forces of utility companies or municipalities in effecting the installation of new facilities as shown on the plans or relocation of their existing facilities. The

Contractor shall consider in his bid all permanent and temporary utility appurtenances in their present or relocated positions and installation of new facilities as required for the project; and *no additional compensation will be made for delays, inconvenience or damage sustained by him due to interference from the above-noted utility appurtenances or the operation of installing or moving them."* (Emphasis added.) The arbitrators' report omitted any discussion of this provision, but the contract as a whole was included in the corrected report as an exhibit. The trial court construed the contract to prevent White Oak from claiming damages incurred as a result of the gas company delay, and thus, pursuant to Practice Book § 440,[6] sustained DOT's objection to the finding of liability as "not properly reached on the basis of the subordinate facts found."

White Oak does not contest the trial court's conclusion that "no damages for delay" clauses are generally valid and enforceable and are not contrary to public policy. See 5 A. Corbin, Contracts § 1068, note 87; annot., Validity and Construction of "No Damage" Clause With Respect to Delay in Building or Construction Contract, 74 A.L.R.3d 187. Rather, White Oak maintains that the delay in this case falls within the exceptions to the enforceability of such clauses, and urges us to adopt the list of such exceptions recently

---

[6] "[Practice Book] Sec. 440. OBJECTIONS TO ACCEPTANCE OF REPORT

"A party may file objections to the acceptance of a report on the ground that conclusions of fact stated in it were not properly reached on the basis of the subordinate facts found, or that the committee erred in rulings on evidence or other rulings or that there are other reasons why the report should not be accepted.

"If an objection raises an issue of fact the determination of which may require the consideration of matters not appearing in the report or stenographic notes of proceedings before the committee, the adverse party shall, within two weeks after the filing of the objection, plead to it by a motion to strike, answer or other proper pleading."

enunciated by the New York Court of Appeals in *Corinno Civetta Construction Corporation* v. *New York,* 67 N.Y.2d 297, 493 N.E.2d 905, 502 N.Y.S.2d 681 (1986). We agree with the trial court that, although *Corinno Civetta Construction Corporation's* statement of the law should be followed in Connecticut, the delay does not fall within the exceptions enumerated in that case.

In *Corrino Civetta Construction Corporation* v. *New York,* supra, the New York Court of Appeals rejected a sewer construction company's claim that it was entitled to damages for delay caused, in part, by the defendant city's moratorium on street openings, notwithstanding the presence of a "no damages for delay" clause contained in its contract. Considering the reach of the "no damages for delay" clause, the court held: "Generally, even with such a clause, damages may be recovered for: (1) delays caused by the contractee's bad faith or its willful, malicious, or grossly negligent conduct, (2) uncontemplated delays, (3) delays so unreasonable that they constitute an intentional abandonment of the contract by the contractee, and (4) delays resulting from the contractee's breach of a fundamental obligation of the contract." Id., 309. Applying these exceptions, the New York Court of Appeals concluded that the city was not willful, malicious, or grossly negligent in refusing to authorize additional overtime so that the project could be completed before the moratorium went into effect, and that a contract clause proscribing work during the moratorium demonstrated that such a delay had been expressly contemplated by the parties.

White Oak first claims that the gas company delay was caused by DOT's "grossly negligent" conduct or conduct amounting to a "material breach" of the contract. White Oak contends that DOT was responsible

for the delay because another clause in the contract provided: "It will be the State's duty to notify all utility companies, all pipeline owners, or other parties affected, and to have all necessary adjustments of the public or private utility fixtures, pipelines, and other appurtenances within or adjacent to the limits of construction, made as soon as practicable, when such changes are required by the State." White Oak maintains that DOT's failure to *effectuate* a timely relocation by the gas company was a breach of its contractual duties and grossly negligent. We disagree.

The express terms of the contract delineate DOT's duties with respect to coordination with utility companies. DOT was required only to notify utility companies of required changes and to "have" required adjustments (e.g., relocation of a gas main) "made as soon as practicable." The arbitration panel made no finding that DOT breached this obligation. Its only finding with respect to the gas company was that the "plaintiff had reasons to expect that the gas main . . . would be removed upon the installation of the regulator and piping at the intersection of Peck and Short Streets." It did not make any finding that DOT had failed to notify the gas company. It did not make any finding that the gas main relocation occurred later than was "practicable." On the facts presented to it by the arbitrators' report, the trial court could not have held that DOT breached its obligation under this provision or acted with gross negligence or in bad faith. Practice Book § 439; *Wixner* v. *Wixner,* 154 Conn. 703, 704, 223 A.2d 807 (1966).

White Oak's next argument is that the gas company delay was "uncontemplated." It points to another provision of the contract providing that "[t]he existing gas main on Elm Street between Columbus Boulevard and the north project limit *cannot* be abandoned prior to

the installation of a proposed regulator and piping at the intersection of Peck and Short Street (State Project 88-48) by the Connecticut Natural Gas Corp." (emphasis added) and to the arbitrators' finding that "[w]hen the contract was awarded to the plaintiff in April of 1974, the plaintiff had reasons to expect that the gas main on Elm Street between Columbus Boulevard and the north project limits would be removed upon the installation of the regulator and piping at the intersection of Peck and Short Streets."

White Oak's reasoning is flawed. As the *Corinno Civetta Construction Corporation* court explains, the exception for "uncontemplated" delays "is based on the concept of mutual assent. Having agreed to the exculpatory clause when he entered into the contract, it is presumed that the contractor intended to be bound by its terms. It can hardly be presumed, however, that the contractor bargained away his right to bring a claim for damages resulting from delays which *the parties* did not contemplate at the time." (Emphasis added.) *Corinno Civetta Construction Corporation* v. *New York,* supra, 310. For a delay to be uncontemplated, it must be uncontemplated by both parties, or more objectively stated, must not be "reasonably foreseeable." Id.[7] The arbitrators did not make any finding that such a delay was not reasonably foreseeable. The "no damages for delay" clause itself indicates that both parties "contemplated" similar delays; it specifically states that "no additional compensation will be made for delays . . . due to interference from . . . the operation of installing or moving [the above-noted utility appurtenances]." As the New York Court of Appeals held in *Corinno Civetta Construction Corporation,* the presence of such

---

[7] We do not consider when, if ever, delay caused by events beyond the control of the state or other contractee could ever support an award of delay damages. See 2 S. Stein, Construction Law (1990) ¶ 6.11.

language demonstrates that this type of delay *was* contemplated by the parties.

White Oak's fall-back position, that it was not required to anticipate an "inordinate" delay, is similarly unfounded. There is no finding that the delay was "inordinate" nor can we conclude as a matter of law that the period of approximately six months during which White Oak was impeded in the performance of its work was so unreasonable as to exceed the mutual contemplation of the parties. While "no damages for delay" clauses are inapplicable to delays so great that they are equivalent to abandonment of a contract; see annot., 74 A.L.R.3d 187, 226–27, supra; White Oak does not argue that the delay was of that magnitude. There is nothing in the findings or the contract to indicate that the delay resulting from the gas line relocation does not fall within the scope of the "no damages for delay" clause or that it was not contemplated by both parties. The trial court's exclusion of damages caused by the gas company delay, including home office overhead, was correct.[8]

In calculating the amount of damages to be excluded by the "no damages for delay" clause, the trial court excluded (1) the cost of sandblasting and repainting

---

[8] The "no damages for delay" clause does not deprive White Oak of all relief. Although White Oak is not entitled to damages caused by the delay in relocating the gas line, it was relieved of its obligation to finish the project within the original 1650 day limit and thus entitled to retrieve the $87,000 in liquidated damages improperly withheld by the state. In effect, the contract gave White Oak one remedy—an extension of time—instead of the remedy of damages (at least as to delays caused by utility alteration delays). Compare, e.g., *Taylor-Fichter Steel Construction Co.* v. *Niagara Frontier Bridge Commission,* 261 App. Div. 288, 291, 25 N.Y.S.2d 437, aff'd, 287 N.Y. 669, 39 N.E.2d 290 (1941); *F. N. Lewis Co.* v. *State,* 132 Misc. 688, 689, 230 N.Y.S. 517 (1928); *A. B. Barr & Co.* v. *State,* 127 Misc. 75, 76, 215 N.Y.S. 313 (1926) (contract clauses barred recovery for delays resulting from delays by third parties; contractor's sole remedy was an extension of time in order to avoid liability for his own delayed performance).

diaphragms and beams, in the amount of $44,652.69, required because of the delay associated with the gas line, and (2) 186 days of home office overhead, or $386,694. It did not, however, reduce the damages calculated for labor cost increases, project overhead, idle equipment, and additional bond premium. In its cross appeal, DOT claims that these elements of damage should also have been adjusted to exclude the 186 days of delay damages that were due to the gas line delay. We agree.

The trial court's ruling that damages caused by the gas line delay should be excluded would have little significance if part of the damages attributed to that delay were, nevertheless, awarded.[9] The trial court should have made the following *additional* reductions: $35,637.60 of labor cost increase due to wage increases; $89,618.52 of project overhead; $70,875.30 of idle equipment damages; and $2142.72 of additional bond premium.[10] These reductions are in addition to the reductions made, correctly, by the trial court.

## II

Although the trial court disallowed the damages caused by the gas company delay, it allowed White Oak damages for delays that were caused by DOT's delay in furnishing controls for the construction of temporary railroad lines and the ensuing winter delay. DOT did not challenge the finding that it was liable for damages resulting from these delays, but objected to the calculation of the damages.

---

[9] The state might, of course, be liable for such sums if the contract provided that the state would pay for increases in certain costs after the commencement of the project. In such a case, the sums due would not be "damages" but amounts due under the contract. The first count of White Oak's original complaint sought increased common carrier charges based on a contractual provision providing for such increases.

[10] White Oak has not contested the calculations presented by DOT in its cross appeal, but has argued only that the "no damages for delay" clause should not be enforced.

While White Oak waited for DOT to furnish the controls, its machines stood idle. The loss of use of the machines was an element of White Oak's damages. The arbitrators determined that these damages amounted to $298,741.88. They reached this conclusion by multiplying the number of days machines were idle by rental rates found in the "blue book," or "Standard Schedule of Equipment Rental Rates" on file with the highway department, a compilation of equipment rental rates charged by dealers of equipment for the use of various types of equipment. The contract specified that these "blue book" rates were to be used in measuring extra and cost-plus work performed by White Oak. The trial court took notice that "blue book" rates, being rental rates, do not, however, take into account the fact that machines standing idle do not suffer wear and tear. DOT therefore objected to the amount of idle equipment damages and requested the trial court to reduce those damages by 50 percent to reflect the lack of wear and tear.

In *Chicago College of Osteopathic Medicine* v. *George A. Fuller Co.,* 776 F.2d 198 (7th Cir. 1985), the Seventh Circuit Court of Appeals upheld a trial court's action in discounting idle equipment damages by 50 percent to reflect lack of wear and tear. Such a 50 percent reduction is the standard method used by the federal courts for making such an adjustment. See *W.G. Cornell Co.* v. *Ceramic Coating Co.,* 626 F.2d 990, 994 (D.C. Cir. 1980); *Cornell Wrecking Co.* v. *United States,* 184 Ct. Cl. 289, 291 (1968); *Laburnum Construction Corporation* v. *United States,* 325 F.2d 451, 459 n.10 (Ct. Cl. 1963); *Warren Bros. Roads Co.* v. *United States,* 105 F. Sup. 826, 830 (Ct. Cl. 1952); *Morrison-Knudsen Co.* v. *United States,* 84 F. Sup. 282, 288 (Ct. Cl. 1949); *Brand Investment Co.* v. *United States,* 58 F. Sup. 749, 751 (Ct. Cl. 1944), cert. denied, 324 U.S.

850, 65 S. Ct. 684, 89 L. Ed. 1410 (1945). The trial court concluded that such a reduction was required as a matter of law, and accordingly reduced the idle equipment damages by $149,370.94.

Without deciding whether our courts should follow the federal practice of applying a 50 percent reduction for lack of wear and tear in all such cases, we agree that the trial court was correct in making the reduction in this case. White Oak did not dispute that its machines were spared the wear and tear of use in construction. *Some* reduction was required as a matter of law. It was not unreasonable for the trial court to follow the well established practice of the federal courts in similar situations.

In its brief White Oak maintains that the monthly "blue book" rental rate incorporates a reduction for idle equipment not included in the daily rate because of the likelihood that equipment rented monthly will not be used so continuously as when it is rented daily. White Oak does not refer to any evidence from which the appropriate allowance for wear and tear could have been calculated. Since White Oak in its calculation made no allowance whatsoever for lack of wear and tear while its equipment was idle, the trial court, recognizing that such an allowance was necessary, properly utilized the only source available to it, the federal practice of making an allowance of 50 percent in the rental rates, whether daily or monthly so far as the cases indicate.

## III

The final issue before us is whether the state is liable for prejudgment interest on the amounts due the plaintiff, and if so, on which amounts and at what rate.

White Oak claimed that it was entitled to prejudgment interest under the general interest statute, Gen-

eral Statutes § 37-3a,[11] or, in the alternative, under a section of the highway construction and maintenance statutes, General Statutes § 13a-96.[12] The trial court first concluded that a prejudgment interest award under § 37-3a was barred by the doctrine of sovereign immunity, and went on to consider the claim for interest under § 13a-96. In its second analysis, the court declined to award prejudgment interest for two reasons: (1) the arbitration panel, as factfinder, made no finding that White Oak was entitled to interest; and (2) § 13a-96 interest was not available on untimely progress payments actually made before acceptance of the project and sixty days thereafter. We will consider each portion of the trial court's analysis in turn.[13]

---

[11] "[General Statutes] Sec. 37-3a. RATE RECOVERABLE AS DAMAGES. Except as provided in sections 37-3b, 37-3c and 52-192a, interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions or arbitration proceedings under chapter 909, including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable except as otherwise provided with respect to demand obligations in section 42a-3-122 (4) (a). Judgment may be given for the recovery of taxes assessed and paid upon the loan, and the insurance upon the estate mortgaged to secure the loan, whenever the borrower has agreed in writing to pay such taxes or insurance or both. Whenever the maker of any contract is a resident of another state or the mortgage security is located in another state, any obligee or holder of such contract, residing in this state, may lawfully recover any agreed rate of interest or damages on such contract until it is fully performed, not exceeding the legal rate of interest in the state where such contract purports to have been made or such mortgage security is located."

Until 1979, § 37-3a set the interest rate at 6 percent. General Statutes (Rev. to 1977) § 37-3a. Thereafter, the rate was 8 percent; Public Acts 1979, No. 79-364; until 1983, when it was increased to 10 percent. Public Acts 1983, No. 83-267. Thus, depending when the amounts White Oak claimed were due, a different rate of interest would apply. See *Northwestern Electric, Inc.* v. *Rozbicki,* 6 Conn. App. 417, 428, 505 A.2d 750 (1986).

[12] "[General Statutes] Sec. 13a-96. PAYMENT TO CONTRACTOR UNDER HIGHWAY CONTRACT. The commissioner shall pay any sum due any contractor under any contract awarded by him not later than sixty days after its completion and acceptance. After such sixty-day period, interest shall begin to run in favor of the contractor at the rate of six per cent per annum on the unpaid balance."

[13] Because we hold that White Oak was not barred from seeking prejudgment interest according to General Statutes § 37-3a, the trial court's analysis of General

## A

Section 37-3a permits recovery of interest "in civil actions or arbitration proceedings under chapter 909," at a maximum rate of 10 percent, "as damages for the detention of money after it becomes payable." Judicial gloss applied to this language since the statute was first enacted in 1873 (when the maximum interest rate allowed was 7 percent); General Statutes (1875 Rev.) title 18, c. 5, § 2; limits it to damages for the detention of money "wrongfully withheld." See, e.g., *Cecio Bros., Inc.* v. *Feldmann,* 161 Conn. 265, 287 A.2d 374 (1971).

"We have long recognized the common-law principle that the state cannot be sued without its consent." *Sentner* v. *Board of Trustees,* 184 Conn. 339, 342, 439 A.2d 1033 (1981); *Horton* v. *Meskill,* 172 Conn. 615, 623, 376 A.2d 355 (1977); *Textron, Inc.* v. *Wood,* 167 Conn. 334, 339, 355 A.2d 307 (1974); *Bergner* v. *State,* 144 Conn. 282, 284, 130 A.2d 293 (1957). Thus, sovereign immunity shields the state from liability under a statute of general application, such as § 37-3a. Moreover, applying the principle that waivers of sovereign immunity are to be applied strictly, we have held that even where the state consents to suit, it does not consent to liability unless such consent is disclosed " 'by the use of express terms or by force of a necessary implication.' " *Duguay* v. *Hopkins,* 191 Conn. 222, 228, 464 A.2d 45 (1983), quoting *Baker* v. *Ives,* 162 Conn. 295, 298, 294 A.2d 290 (1972); *Bergner* v. *State,* supra, 285–86. Accordingly, in *Struckman* v. *Burns,* 205 Conn. 542, 559–60, 534 A.2d 888 (1987), we held that Gen-

---

Statutes § 13a-96 is moot. That analysis is, however, equally applicable to the issue of interest under § 37-3a and therefore likely to be reapplied on remand. For that reason, we will also consider the trial court's reasoning with respect to § 13a-96.

eral Statutes § 13a-144,[14] which allows a person injured by means of a defective highway to sue the commissioner of transportation, did not permit an award of prejudgment interest against the state in the absence of express language to that effect. See also 72 Am. Jur. 2d, States § 89. Thus, we agree with the trial court that the state would be immune from an award of interest under § 37-3a in the absence of statutory authorization.

General Statutes § 4-61, pursuant to which this suit was brought, provides such authorization: "All legal defenses *except governmental immunity* shall be reserved to the state." (Emphasis added.) Section 13a-144, the statute involved in *Struckman* v. *Burns,* supra, contained no such explicit provision. Moreover, the legislative history of § 4-61 clearly demonstrates

---

[14] "[General Statutes] Sec. 13a-144. DAMAGES FOR INJURIES SUSTAINED ON STATE HIGHWAYS OR SIDEWALKS. Any person injured in person or property through the neglect or default of the state or any of its employees by means of any defective highway, bridge or sidewalk which it is the duty of the commissioner of transportation to keep in repair, or by reason of the lack of any railing or fence on the side of such bridge or part of such road which may be raised above the adjoining ground so as to be unsafe for travel or, in case of the death of any person by reason of any such neglect or default, the executor or administrator of such person, may bring a civil action to recover damages sustained thereby against the commissioner in the superior court. No such action shall be brought except within two years from the date of such injury, nor unless notice of such injury and a general description of the same and of the cause thereof and of the time and place of its occurrence has been given in writing within ninety days thereafter to the commissioner. Such action shall be tried to the court or jury, and such portion of the amount of the judgment rendered therein as exceeds any amount paid to the plaintiff prior thereto under insurance liability policies held by the state shall, upon the filing with the comptroller of a certified copy of such judgment, be paid by the state out of the appropriation for the commissioner for repair of highways; but no costs or judgment fee in any such action shall be taxed against the defendant. This section shall not be construed so as to relieve any contractor or other person, through whose neglect or default any such injury may have occurred, from liability to the state; and, upon payment by the comptroller of any judgment rendered under the provisions of this section, the state shall be subrogated to the rights of such injured person to recover from any such contractor or other person an amount equal to the judgment it has so paid. The com-

that the legislature did not intend the state to retain immunity against the imposition of interest. In its earlier version, § 4-61 provided: "All legal defenses except governmental immunity shall be reserved to the state *and no interest or costs shall be included in any judgment against the state.*" (Emphasis added.) General Statutes (1958 Rev.) § 4-61. In 1961, the statute was amended to delete the emphasized clause. Public Acts 1961, No. 555. If the legislature did not intend to waive immunity as to interest and costs, it would not have amended the statute to that effect.

The language of § 4-61 is so plain that the state's liability for prejudgment interest awards has not been challenged in any published decision since the statute was amended, almost thirty years ago. Indeed, we implicitly recognized that sovereign immunity is no defense to an award of interest in an action under § 4-61 in *Southern New England Contracting Co.* v. *State,* 165 Conn. 644, 665, 345 A.2d 550 (1974), when we discussed interest as an element of the damages that may be payable by the state in such an action. See also *Walter Kidde Constructors, Inc.* v. *State,* 37 Conn. Sup. 50, 434 A.2d 962 (1981).

### B

Having concluded that § 4-61 puts the state in the same position as a private party with respect to an

missioner, with the approval of the attorney general and the consent of the court before which any such action is pending, may make an offer of judgment in settlement of any such claim. The commissioner and the state shall not be liable in damages for injury to person or property when such injury occurred on any highway or part thereof abandoned by the state or on any portion of a highway not a state highway but connecting with or crossing a state highway, which portion is not within the traveled portion of such state highway. The requirement of notice specified in this section shall be deemed complied with if an action is commenced, by a writ and complaint setting forth the injury and a general description of the same and of the cause thereof and of the time and place of its occurrence, within the time limited for the giving of such notice."

award of prejudgment interest under § 37-3a, we next consider whether the trial court's reasons for refusing to award interest under § 13a-96 would also justify refusing to award interest under § 37-3a.[15]

The trial court split White Oak's claims for prejudgment interest into two categories: (1) interest on untimely progress payments that the state was required to make before completion of the contract; and (2) interest on everything else. It rejected White Oak's second category of claims for interest because the arbitration panel, which it analogized to a jury, had not made a specific finding that White Oak was entitled to interest.

The trial court misconstrued its role in reviewing an arbitrator's report required by General Statutes § 13b-57a.[16] An arbitration panel sitting pursuant to that statute finds only subordinate facts, as the court's own order referring the issues to arbitration recognized. It is not analogous to a jury empowered to decide liability and award damages. It finds facts only, and, unlike a jury, does not apply the law to the facts. Section 13b-57a provides that judgment on an arbitrators'

---

[15] We note that General Statutes § 13a-96 sets the applicable interest rate at 6 percent, whereas General Statutes § 37-3a now sets the rate at 10 percent (the rate was 6 percent prior to October 1, 1979, and 8 percent between that date and October 1, 1983). Were § 13a-96 to preempt § 37-3a with regard to interest due highway contractors, it would have the bizarre effect of limiting highway contractors to 6 percent interest while allowing building contractors, who also may sue pursuant to General Statutes § 4-61, to collect 10 percent interest. As the state itself explains, however, § 13a-96 "is not a broad form of statutory authority to allow interest as damages, as is § 37-3a. Rather, it is . . . limited in its operation to the unpaid balance, due under a contract, which remains unpaid for more than sixty days after completion and acceptance of the contract." Section 13a-96 is directed to the commissioner of transportation, whose duty is to authorize payments in accordance with the contract provisions, not to pay damages for breach of contract.

[16] See text at footnote 3, supra.

award shall be rendered "according to law *and* the facts found." (Emphasis added.) Once the panel has presented the judge with the subordinate facts, the judge sits as he does in a trial to the court when the facts have been stipulated. See General Statutes § 4-61 ("[s]uch action [under § 4-61] shall be tried to the court without a jury"). The report's silence regarding White Oak's entitlement to damages has no relevance. White Oak's complaint, requesting prejudgment interest, remained before the court for its decision on the basis of the facts stated in the report.

The trial court also declined to award interest as damages for the state's failure to make progress payments on time, as required by the contract. It concluded that § 13a-96 prohibited interest for late payments so long as such payments were made within sixty days following completion of the contract. Because the progress payments were made within that period of time, the court held that White Oak could not collect interest for the state's delay in payment.

As noted above,[17] § 13a-96 simply authorizes the highway commissioner to pay a contractor 6 percent interest on a late payment even if the contractor does not file suit under § 4-61. It does not *limit* a contractor's right to seek interest under § 37-3a as authorized by § 4-61. Section 37-3a plainly states that it applies "[e]xcept as provided in sections 37-3b, 37-3c and 52-192a." It makes no such exception for § 13a-96. " 'Unless there is evidence to the contrary, statutory itemization indicates that the legislature intended the list to be exclusive.' " *State* v. *Kish,* 186 Conn. 757, 766, 443 A.2d 1274 (1982); *Chairman* v. *Freedom of Information Commission,* 217 Conn. 193, 200, 585 A.2d 96 (1991) ("[e]xpressio unius est exclusio alterius").

---

[17] See footnote 15, supra.

"It is a cardinal rule of statutory construction that a legislative body does not intend to adopt useless legislation." *J & M Realty Co.* v. *Norwalk,* 156 Conn. 185, 192, 239 A.2d 534 (1968). Even when a contractor brings suit under § 4-61, § 13a-96 acts to guarantee interest on amounts payable "under the contract" not paid within sixty days after completion and acceptance. The language in § 13a-96 concerning an award of interest is mandatory, whereas the language of § 37-3a is permissive. Thus, if White Oak had indeed not received payment within sixty days after completion of the contract, it would have been *entitled,* under § 13a-96, to 6 percent interest on those unpaid amounts; it may receive interest as provided in § 37-3a only if the court in its discretion chooses to make such an award.

As it is, White Oak should be awarded interest on the late progress payments under § 37-3a unless the trial court in its discretion believes that to comport with "the demands of justice"; *Cecio Bros., Inc.* v. *Feldmann,* supra, 275; such an interest award should not be made. See, e.g., *Newington* v. *General Sanitation Service Co.,* 196 Conn. 81, 90–91, 491 A.2d 363 (1985). The trial court should have considered the claim for prejudgment interest on its merits and if it concluded that the amounts for which DOT was liable were both "payable" and "wrongfully" withheld, should have awarded prejudgment interest at the rate set in the then effective version of § 37-3a.[18]

---

[18] We note that sums may be "payable" even if they were not, strictly speaking, liquidated until the judgment. See H. Oleck, Damages to Persons and Property (1955) § 296, p. 626. The test, where the sum reflects compensation for a pecuniary injury, is whether the sums were not so uncertain that a defendant could not have been on notice as to the amount it was required to pay. See W. Hale, Law of Damages (2d Ed.) § 67; 1 J. Sutherland, Law of Damages (4th Ed.) § 347. The sums due White Oak became "payable" when it submitted its requisitions to the state, allowing for the terms of payment prescribed by contract or statute. For some items,

We affirm the challenged portions of the judgment of the trial court with respect to (1) the reduction of the delay damages for the gas company delay and (2) reduction of the idle equipment damages. We reverse the portion of the judgment concerning DOT's immunity from prejudgment interest under General Statutes § 37-3a. We sustain DOT's cross appeal seeking a reduction of certain elements of damages resulting from the gas company delay. We therefore remand the case with direction to reduce the damages in accordance with this opinion and for consideration of the merits of White Oak's claim for prejudgment interest under § 37-3a.

In this opinion the other justices concurred.

such as the amounts claimed for extra work ordered by the state, that date would likely be when the work was performed, even before the final acceptance of the contract; for others, such as delay damages, the date might be the date White Oak gave the state notice of the amounts it claimed as delay damages.